Gordon H. HUBBARD and Shirley M. Hubbard, Plaintiffs, Appellees,

v.

FAROS FISHERIES, INC., Defendant, Appellant.

Nos. 79–1425, 80–1176.

United States Court of Appeals, First Circuit.

Argued May 7, 1980.

Decided July 22, 1980.

Richard A. Dempsey, Boston, Mass., with whom Leo F. Glynn and Glynn & Dempsey, Boston, Mass., were on brief, for defendant, appellant.

Roger E. Hughes, Jr., Boston, Mass., with whom David J. Ansel and Latti Associates, Boston, Mass., were on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, DAVIS, Judge.*

COFFIN, Chief Judge.

Appellee Gordon Hubbard, a fisherman, brought an action against appellant Faros Fisheries, Inc., seeking damages for a heart attack he suffered while working on appellant's vessel "Ocean". Appellee's complaint sought damages on three theories: (1) negligence under the Jones Act, 46 U.S.C. § 688, (2) unseaworthiness under general maritime law, and (3) maintenance and cure. The first two theories were tried to a jury, while the issue of maintenance and cure was reserved for decision by the court. The jury found for the plaintiff on both the negligence and unseaworthiness counts and awarded damages of $85,000 plus prejudgment interest. The court entered judgment on July 2, 1979, in the amount of $100,010. Defendant filed post-trial motions for judgment notwithstanding the verdict or, in the alternative, a new trial, both of which were denied by the district court. Subsequently, in a memorandum and order issued on November 20, 1979, the court awarded maintenance and cure, at the rate of $7 per day stipulated by the parties, from the date of the plaintiff's heart attack, May 24, 1976, to the date of the jury verdict, June 29, 1979.

In this appeal, appellant argues: (1) that the court erroneously denied its motions for judgment n.o.v. and new trial because the evidence was insufficient to support the jury's findings of unseaworthiness and negligence, (2) that the court failed to instruct the jury, as appellant had requested, with regard to the legal significance of particular facts of the case and to present its theory of the case to the jury, and (3) that the court improperly determined the time period for which maintenance and cure should be paid to the appellee.

At the time of the incident precipitating this lawsuit, appellee was fifty-six years old, was apparently in good health, and had no history of heart trouble. Appellee's usual duty aboard the "Ocean" was to operate the main winch, which was used to retrieve and coil the cable from which the fishing nets are suspended. As winch operator, appellee was required to man the controls for the mechanized winch and also to operate manually a spooling mechanism that guides the cable onto the spool evenly. This manual operation consisted of turning a wheel located behind the winch. Proper functioning of the spooling mechanism is essential to the entire fishing operation.

On the morning of Saturday, May 22, 1976, appellee was operating the portside winch as the nets were being hauled in. He testified that in the course of this operation the spooling mechanism jammed and that he put his shoulder to the wheel and strained to turn it. He then felt a sharp pain in his chest, accompanied by a pain in his arm and cramps in his stomach. He called a fellow crewmember to take over and then went below. Appellee testified that he twice asked the Captain to contact another boat to take him ashore, but the Captain told him this was impossible be-

---

* Of the United States Court of Claims, sitting by designation.

cause the ship's phone was out of order. According to appellee, the Captain also refused to change course to search for another vessel that could take him ashore because he was unwilling to interrupt fishing. Appellee's condition failed to improve, and on Monday the crew contacted the Coast Guard, which dispatched a helicopter to transport him to a hospital. Appellee was treated first as an emergency patient at a Veterans Administration hospital from May 24 to June 14, 1976, and then at the Public Health Service Hospital from June 14 to July 1, 1976. He was diagnosed as suffering from both coronary artery disease, a progressive and permanent condition, and a myocardial infarction, a heart attack. He is now permanently disabled.

The two counts on which the case went to the jury, unseaworthiness and Jones Act negligence, constitute alternative grounds for recovery. *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 222, 78 S.Ct. 1201, 1202, 2 L.Ed.2d 1272 (1958). The jury returned special verdicts finding both that the "Ocean" was unseaworthy and that appellants were negligent for purposes of 46 U.S.C. § 688, and also that appellee was not contributorially negligent with respect to either count. Thus, in order to affirm the jury's award of damages, we need only find that the court's instructions and its denial of appellant's post-trial motions were proper with respect to either of these two substantive grounds for recovery.

■ We consider first the unseaworthiness count. Both parties agree that a shipowner has an absolute duty to provide to every member of his crew "a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). This duty includes maintaining the ship's equipment in proper operating condition, *Mahnich v. Southern Steamship Co.*, 321 U.S. 96, 104, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1944), and it is breached by transitory as well as permanent defects in such equipment, *Mitchell v. Trawler Racer, Inc., supra*, 362 U.S. at 549, 80 S.Ct. at 932. Even a temporary and unforeseeable malfunction or failure of a piece of equipment under proper and expected use is sufficient to establish a claim of damages for unseaworthiness, *see Usner v. Lukenbach Overseas Corp.*, 400 U.S. 494, 499, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971), provided the unseaworthy condition is the proximate cause of the harm suffered by the seaman.

Appellant's chief argument for judgment n.o.v. or new trial relief from the jury's finding of unseaworthiness is that the winch operated by appellee was "reasonably fit" for its intended purpose. Citing testimony elicited at trial, appellant asserts that the winch could have been operated safely by two winchmen working together, and in fact had been so operated on those infrequent occasions when it had malfunctioned. Alternatively, appellant argues that appellee could have used a bar located beside the winch as a lever to turn the wheel on the spooling mechanism without undue exertion. Thus, the argument goes, because the winch could have been safely operated in spite of the malfunctioning spooling mechanism by either of the above two methods, no unseaworthy condition existed. Furthermore, appellant asserts, any harm suffered by appellee was attributable to his own unwillingness to avail himself of a safe method for operating the winch. Finally, appellant appears to argue that the malfunctioning winch was not the proximate cause of appellee's injury. Instead, appellant asserts that since other seamen aboard the "Ocean" had operated this equipment and had "met the strength demands of the task within the available procedures" in the past, appellant's disabling injury was caused by his underlying coronary artery disease.

■ The standard for granting judgment n.o.v. in this circuit is well settled. Such a motion should be granted only upon a determination that the evidence could lead reasonable men to but one conclusion, a determination made without evaluating the credibility of witnesses or the weight of the evidence at trial. *DeMars v. The Equitable Life Assurance Society of the United*

*States*, 610 F.2d 55, 57 (1st Cir. 1979). Thus, however plausible appellant's view of the case may be, in determining whether the district judge properly denied the motion we are bound to review the evidence and the inferences to be drawn therefrom in the light most favorable to appellee. *Rios v. Empresas Lineas Maritimas Argentinas*, 575 F.2d 986, 989 (1st Cir. 1978).

■■■ Appellant's motion for new trial based on insufficient evidence is subject to a similarly strict standard of review. Although a district judge may order a new trial even though there may be substantial evidence to support the verdict, *see generally* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806 (1973), where the trial judge has denied such a new trial motion it is "only in a very unusual case that we will reverse such a ruling as an abuse of discretion", *Sears v. Pauly*, 261 F.2d 304, 309 (1st Cir. 1958). In order to award a new trial in this case, we must find that the jury's verdict was so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice.

■■■ The cases relied on by appellant, apparently for the proposition that the vessel was seaworthy as a matter of law, are inappropriate. In most of the cited cases, the appellate court merely declined to reverse the conclusion of the fact finder that the vessel in question was not unseaworthy. *See Little v. Green*, 428 F.2d 1061 (5th Cir. 1970); *Haskell v. Boat Clinton-Serafina, Inc.*, 412 F.2d 896 (1st Cir. 1969); *Friend v. Tropis Co.*, 382 F.2d 633 (4th Cir. 1967); *Benton v. United Towing Co.*, 224 F.2d 558 (9th Cir. 1955). In none of the cases did the appellate court award judgment n.o.v. or new trial after a jury had found unseaworthiness. Upon reviewing the evidence adduced at trial, we conclude that in this case reasonable minds could well differ in determining whether the malfunction of the winch constituted an unseaworthy condition on the vessel. There was sufficient evidence for the jury to conclude that the winch's spooling mechanism malfunctioned: appellee testified that he was unable to operate it as intended by turning the wheel and also introduced testimony that prior to his heart attack both he and another crew member had reported to the ship's officers that the spooling mechanism was defective. From this evidence, viewed in conjunction with testimony that the spooling device was essential to the proper functioning of the winch, the jury could justifiably conclude that the winch was not reasonably fit for its intended purpose.

■■■ Nor do we find that because appellee might have been able to operate the winch safely by requesting help or using a lever, the jury was required to find that the ship was seaworthy. In *Peymann v. Perini Corp.*, 507 F.2d 1318, 1322 (1st Cir. 1974), we noted that where there are two means of performing a shipboard task, one of which is unsafe, "it would be an indirect application of the proscribed doctrine of assumption of the risk to foreclose recovery completely if the seaman chose the less desirable alternative." A seaman may be wholly barred from recovery only if "he selects a method he could not reasonably think open to him." *Id.* In this case, we believe the jury was entitled to conclude that appellee behaved in a way that he could reasonably have thought was open to him. The instinctive response to a piece of equipment that is supposed to move, but will not, is to exert more effort. Indeed, appellant's own brief, by asserting that a reasonably fit seaman could have forced the wheel to turn without being injured, tacitly acknowledges that appellee was making a reasonable use of the equipment at the time of his accident [1].

1. Although contributory negligence is not available as a complete defense to an unseaworthiness claim, *Palermo v. Luckenbach Steamship Co.*, 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957), the principle of comparative negligence does apply, *see* 1B Benedict on Admiralty § 25 (6th ed. 1976). Thus, a shipowner's liability may be offset proportionately to the extent to which the jury determines the plaintiff's own negligence contributed to his injury. Here the jury specifically found that no portion of the appellee's harm was attributable to his negligence. Appellant has not explicitly challenged the sufficiency of the evidence supporting this finding.

Finally, we reject appellant's contention that the defective winch was not the proximate cause of appellee's injury. Both appellee's hospital records and expert testimony introduced at trial provided a basis for the jury to conclude that his heart attack was precipitated by his strenuous effort to turn the wheel of the spooling mechanism. Expert medical testimony also supported the conclusion that appellee was permanently disabled from working as a fisherman or engaging in other strenuous work by the after-effects of the attack. Appellant argues that the physical strain required by the recalcitrant winch was not the sole cause of appellee's attack; that but for his underlying coronary artery disease, he would have managed the task without incident. The requisite causation to sustain an unseaworthiness claim, however, is less than that required for a common law negligence action. *See Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975); *Peymann v. Perini Corp., supra*, 507 F.2d at 1324. It is sufficient to sustain the jury's verdict that there was some evidence that the unseaworthy condition of the winch was a direct and substantial cause of appellee's ultimately disabling injury.

As a separate ground for new trial, appellant argues that the trial judge failed to instruct the jury properly with respect to unseaworthiness. Appellant's several objections to the court's refusal to give its requested instructions reiterate a single theme: the trial judge did not misstate the applicable law, but rather failed to explain the appropriate legal standards in terms of the particular facts of the case.[2] Similarly, appellant argues that "the general charge did not sufficiently advise the jury of the legal significance of the theories of the defendant on seaworthiness and contributory negligence."

Appellant's contention is without merit. The trial judge is not required to elaborate the meaning of controlling legal standards in terms of the particular facts of the case. In *Harrington v. United States*, 504 F.2d 1306, 1317 (1st Cir. 1974), erroneously relied on by appellants, we stated that "it is sufficient if the principle of law is correctly stated." The jury instructions we sustained in *Peymann v. Perini Corp., supra*, 507 F.2d at 1321–22, upon which appellant also relies, were somewhat more fact-specific than those given in this case. The opinion does not, however, establish a party's right to the type of specific instructions appellant requested of the court in this case. Our reading of the trial judge's charge convinces us that the elements of unseaworthiness were explained in sufficient detail so that the jury could intelligently apply that standard to the facts of this case and that the appellant's right to mitigation of damages under the theory of comparative negligence was fairly and completely presented to the jury.

The remaining issue we must consider[3] is whether the court erred in awarding maintenance and cure to the appellee through the date of the jury verdict. Prior to trial, appellant had made maintenance payments, at the stipulated daily rate, from May 24, 1976, to January 26, 1977. It was on or before this latter date, appellant asserted, that appellee's condition was determined to be permanent and therefore that appellant's obligation for maintenance and cure ended. The great weight of authority supports the district court's conclusion that a seaman is not entitled to maintenance and cure once his disabling condition "has been found to be permanent and incapable of being improved." *See Farrell v. United States*, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); *Berke v.*

---

We note, however, that we find sufficient evidence to uphold this portion of the jury's verdict.

2. For example, appellant requested the trial judge to give the following instruction with regard to unseaworthiness: "If you find that the winch could have been operated by the plaintiff without undue force by using a bar or requesting assistance of another fisherman, you will find that the vessel was seaworthy."

3. Because we find the jury's verdict supported on the ground of unseaworthiness, we need not consider whether the jury properly found for appellee on the Jones Act count.

*Lehigh Marine Disposal Corp.*, 435 F.2d 1073, n.3 (2d Cir. 1970) (collecting cases); 1B Benedict on Admiralty § 48 at 4–38 (6th ed. 1976).[4] The parties do not disagree over this issue, but rather over the question of when the relevant finding of permanency was made in this case. Appellant argues that the district court mistakenly regarded the controlling determination of permanency to be that made by the court, not the appellee's attending physicians. Appellee apparently does not disagree that it is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure, but he argues that the court found as a matter of fact that an unequivocal medical diagnosis was not rendered until the trial.

In *Vella v. Ford Motor Co.*, 421 U.S. 1, 5, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975), the Supreme Court, quoting the district court, held that "maintenance and cure continue until such time as the incapacity is declared to be permanent." Standing alone, this statement contributes little toward resolving the question of who is to make the determination of permanency. The remainder of the Court's opinion does provide clues, however. The Court based its holding in part on the following reasoning:

> "Denial of maintenance and cure when the seaman's injury, though in fact permanent immediately after the accident, is not *medically diagnosed* as permanent until long after its occurrence would obviously disserve and frustrate the 'combined object of encouraging marine commerce and assuring the well-being of seamen'". *Id.* at 4, 95 S.Ct. at 1383 (emphasis added).

The reference to medical diagnosis suggests that appellant is correct in his assertion that the date of the judicial determination of permanency is not dispositive. This suggestion is bolstered by the Court's quotation with approval of the following language

from *Vitco v. Joncich*, 130 F.Supp. 945, 949 (S.D.Cal. 1955):

> "The shipowner's obligation to furnish maintenance . . . is [not] discharged *until the earliest time when it is reasonably and in good faith determined by those charged with the seaman's care and treatment that the maximum cure reasonably possible has been effected.*" 421 U.S. at 6 n.5, 95 S.Ct. at 1383 (emphasis added by the Supreme Court).

We conclude that appellee was entitled to maintenance and cure until his physicians diagnosed his condition as permanent.

The district court cited *Vella* for the premise that the right to maintenance and cure terminates when "an unequivocal determination of permanency has been made." But the court then stated its factual finding as follows: "In this case, the court was satisfied on the issue of permanency of the plaintiff's condition only after the medical testimony at trial." It appears, therefore, that the court applied an incorrect legal standard to the facts of the case. Because appellant cited facts in the record sufficient to raise at least a colorable claim that appellee's condition was diagnosed as permanent well before the date of the trial, we remand this case to the district court for the limited purpose of determining when appellee's physicians made an unequivocal diagnosis of the permanency of his disability.

*Affirmed in part, vacated in part, and remanded.*

---

4. Although the Supreme Court in *Vella v. Ford Motor Co.*, 421 U.S. 1, 5 n.4, 95 S.Ct. 1381, 1384, n.4, 43 L.Ed.2d 682 (1975), left open the question whether maintenance and cure may be awarded for "palliative medical care to arrest further progress of the condition or to reduce pain", appellee does not argue that he is entitled to such payments.