Robert R. JORDAN, Jr., Plaintiff,
Appellant,

v.

UNITED STATES LINES, INC.,
Defendant, Appellee.

No. 83–1859.

United States Court of Appeals,
First Circuit.

Argued May 9, 1984.

Decided July 5, 1984.

Joseph G. Abromovitz, Boston, Mass., for plaintiff, appellant.

Frank H. Handy, Jr., Boston, Mass., with whom Richard B. Kydd, and Kneeland, Kydd & Handy, Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER, Circuit Judge, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

Appellant, Robert Jordan, while working on defendant's ship, unbolted and opened a metal plate on the side of a boiler pump. Steam and hot water escaped, scalding him. He sued, charging Jones Act negligence, 46 U.S.C. § 688, and general maritime law "unseaworthiness." The jury found for the defendant on both counts.

■ Jordan claims here that he would not have been hurt if an automatic valve between the ship's boiler and pump had closed, for then steam could not possibly have entered the pump. For purposes of this appeal he will concede that he did not follow proper operating procedures: (1) he should have manually closed the automatic valve, and (2) he should not have opened the metal plate until liquid in the pump had drained out through the bottom of the pump; then he could have learned (by noticing what came out of the drain) whether the pump contained hot water and steam. But, he says that failure of the automatic valve to close made the ship "unseaworthy." He points out that a plaintiff injured by "unseaworthiness" is not barred from recovery by his own negligence, even if that negligence might reduce the recovery in the proportion that it contributed to the injury. *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 200 n. 1 (1st Cir.1980); 1B *Benedict on Admiralty* § 25 (7th ed. 1983); *see Valm v. Hercules Fish Products, Inc.,* 701 F.2d 235, 236 (1st Cir.1983). And, he argues that the district court should have granted him a directed verdict, or judgment n.o.v., or at least a new trial, on the issue of "unseaworthiness."

■ To establish his right to a directed verdict, Jordan (the plaintiff), must meet the "strict" standard of showing, through "testimony that the jury is not at liberty to disbelieve" that there is "but one reasonable conclusion." *Service Auto Supply*

*Co. of Puerto Rico v. Harte & Co., Inc.,* 533 F.2d 23, 25 (1st Cir.1976); *see Gonzalez v. La Concorde Compagnie D'assurances,* 601 F.2d 606, 608 (1st Cir.1979). He is entitled to a judgment n.o.v. only if, viewing "evidence and reasonable inferences" in a light most favorable to defendant, they nonetheless "could lead reasonable men to but one conclusion"—in his favor. *Curreri v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 251,* 722 F.2d 6, 8 (1st Cir. 1983) (quoting *de Mars v. Equitable Life Assurance Society of the United States,* 610 F.2d 55, 57 (1st Cir.1979)). And, to convince us to overturn a trial court's decision not to grant a new trial, Jordan must show that the verdict was "so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice." *Lakin v. Daniel Marr & Son Co.,* 732 F.2d 233, 237 (1st Cir.1984) (quoting *Valm v. Hercules Fish Products, Inc.,* 701 F.2d at 237); *see Hubbard v. Faros Fisheries, Inc.,* 626 F.2d at 200. After carefully reading the record, and in light of these standards, we find the case a close one. Nonetheless, we conclude that Jordan is not entitled to a reversal.

■ The basic "unseaworthiness" question is whether the "vessel and appurtenances [were] reasonably fit for their intended use." *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d at 199 (quoting *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960)). We conclude that there is much in the record to support Jordan's claim that they were not fit. Jordan's pump—one of several—apparently had five lines connecting it to the boiler. Four of them had manual "turn off" valves. (They could *only* be turned off by hand.) The fifth had an "automatic spring loaded valve" which was supposed to close automatically when the pump was not working. This valve could also be turned off manually.

The evidence that this "automatic" valve did not close completely is overwhelming. The pump had not been used for thirty days. Thus, had all five lines been turned

* Of the District of Rhode Island, sitting by designation.

off, the pump would have contained only cold water (from condensation). Jordan testified without contradiction, that just before he started working, he made certain the four manual valves in the other pipes were closed. Other testimony (also uncontradicted) showed that after the accident, someone closed the automatic valve by hand and the steam stopped flowing.

Nonetheless, in the circumstances of this case, the fact that the automatic valve did not close completely does not necessarily show "unseaworthiness." Defendant presented considerable evidence suggesting that lines with imperfect automatic valves are nonetheless reasonably fit for their intended use. Several witnesses testified that "automatic spring loaded valves" often remain partially open. A deposit of soft material builds up on the closing disk, preventing a tight fit. Turning the valve by hand will likely close it completely. For this reason, the witnesses said, a workman is supposed to close the valve manually before working on the pump. And, the workman is supposed to drain the pump before starting work so that he can see whether or not steam has nonetheless leaked into the pump through the "automatic" valve.

■ From this evidence a juror might have concluded that the *manual* valves and pump drain were designed with safety in mind, while the function of the automatic valve was not to protect workmen but to keep most of the steam in the boiler. One of the witnesses testified that the automatic valve had the function of "maintaining the back pressure at a proper level" which "is not a safety function." A juror might have concluded that the automatic valve need not always have closed perfectly to serve this function. Alternatively, a juror might have thought that, with these *manual* safety features, the fact that the automatic valve sometimes leaks no more makes the ship "unseaworthy" than does, say, the fact that rust sometimes accumulates on its deck, *see Ezekiel v. Volusia Steamship Co.*, 297 F.2d 215 (2d Cir.1961); or that oil occasionally leaks from its engines, *see Dunlap v. G & C Towing, Inc.*, 613 F.2d 493 (4th Cir.1980); or that its light

bulbs sometimes burn out. The Supreme Court, as well as this circuit, has counseled "reasonable fitness" does not mean perfection. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. at 550, 80 S.Ct. at 933; *Doucette v. Vincent*, 194 F.2d 834, 837–38 (1st Cir. 1952). And, evidence that breakdown, when expected, is properly planned for, helps to show that a system is nonetheless reasonably fit for its intended use. "Unseaworthiness" is normally a question of fact to be determined by the jury. *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d at 200; *Johnson v. Bryant*, 671 F.2d 1276, 1279 ·(11th Cir.1982); *Dunlap v. G & C Towing, Inc.*, 613 F.2d at 496. We are not prepared to overturn the district court's conclusion here that the jury's finding was within the scope of what one might reasonably believe.

■ Appellant also claims that the judge incorrectly instructed the jury about the meaning of "unseaworthiness" because he failed to explain the strict liability nature of "unseaworthiness" and to distinguish it from negligence. The objection that appellant made to the charge after the judge instructed the jury, however, consisted of the following:

MR. ABROMOVITZ: My biggest concerns come from my Requested Instruction No. 17 and No. 18. Again, this is a novel concept for a first-time jury—novel concept for any jury but for a first-time jury in particular.

THE COURT: I will tell them the owner doesn't have to know of the unseaworthiness, but I won't say that (indicating).

END OF CONFERENCE AT THE BENCH

THE COURT: I have been asked to supplement the instructions to you briefly by telling you that if the plaintiff proves that there was an unseaworthiness condition aboard the vessel and that caused his injury he does not have to prove the owner of the vessel knew the unseaworthiness condition existed at the time of the injury.

MR. ABROMOVITZ: Thank you, your Honor.

This objection does not meet the requirement of Fed.R.Civ.P. 51 which states:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds for his objection.

We note that plaintiff made a later objection, before the judge, answering a question from the jury, defined "unseaworthiness" a second time. But this objection also failed to comply with Rule 51.

We have held that Rule 51 means what it says: the grounds for objection must be stated "distinctly" after the charge to give the judge an opportunity to correct his error. *McGrath v. Spirito*, 733 F.2d 967 (1st Cir., 1984); *Gay v. P.K. Lindsay Co., Inc.*, 666 F.2d 710, 712 (1st Cir.1981). Since appellant did not comply with this rule (and since we see no "plain error"), we find no basis for reversal in the instructions.

The judgment of the district court is *Affirmed.*