**Sandra CONWAY, Plaintiff, Appellee,**

v.

**ELECTRO SWITCH CORP.,**
**Defendant, Appellant.**

**Sandra CONWAY, Plaintiff, Appellant,**

v.

**ELECTRO SWITCH CORP., et al.,**
**Defendants, Appellees.**

Nos. 86–1942, 86–1953.

United States Court of Appeals,
First Circuit.

Heard March 4, 1987.

Decided Aug. 6, 1987.

---

Richard J. Riley with whom Murphy, De-Marco and O'Neill, P.C., Boston, Mass., was on brief for Electro Switch Corp.

Lee M. Berger with whom Berger and Markir, Buzzards Bay, Mass., was on brief for Sandra Conway.

Before BOWNES and SELYA, Circuit Judges, and PETTINE,* Senior District Judge.

* Of the District of Rhode Island, sitting by desig-

PETTINE, Senior District Judge.

Both parties to this action have appealed portions of the district court's judgment affirming a jury's award of damages to the plaintiff, Sandra Conway, for discrimination suffered at the hands of her employer, the Electro Switch Corp. ("Electro Switch"). Ms. Conway brought suit in the United States District Court for the District of Massachusetts, alleging that the defendant, Electro Switch, and four of its employees discriminated against her on the basis of her sex and age. The plaintiff alleged violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (1982), as well as violations of Mass.Gen. Laws ch. 151B and Mass.Gen.Laws ch. 12 § 11I, the Massachusetts Discrimination and Civil Rights statutes. The plaintiff also sought damages for bad-faith breach of an at-will employment contract, for intentional infliction of emotional distress, and for interference with contractual relations.

Prior to trial, the district judge dismissed each claim against the individual defendants and dismissed the contractual interference and emotional distress claims against Electro Switch. The case was tried to a jury which found that Ms. Conway was fired from her position at Electro Switch and that her sex, but not her age, was a determinative factor in Electro Switch's decision to terminate her employment. The jury awarded Ms. Conway $32,243.00 for the loss of past earnings and benefits and $56,492.00 for lost future earnings and benefits, also referred to as "front pay." After the jury returned its verdict, the defendant filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The district judge denied the motions and entered final judgment for the plaintiff. The district judge affirmed the back pay award as well as the jury's award of lost future earnings as recoverable under Mass.Gen.Laws Ann. ch. 151B. In addition, the district judge awarded prejudg-

nation.

ment interest on the back pay award, while declining to add any interest payment to the front pay calculation.

Electro Switch appeals the district court's judgment on three grounds. First, Electro Switch charges that the district judge committed prejudicial error in allowing testimony as to sex-biased statements made by two Electro Switch managers; second, Electro Switch contends that the judgment in favor of the plaintiff was contrary to the weight of the evidence; and finally, Electro Switch appeals the award of front pay damages which it argues is not authorized by Massachusetts law. The plaintiff, too, has found grounds for unhappiness in the district court's decision. The plaintiff appeals the eight-percent interest calculation on the award of lost back pay and benefits, arguing that the interest should have been added at a rate of twelve percent per annum as provided by Massachusetts statute. The plaintiff also appeals the district court's refusal to augment the front pay award with interest.

### A. *Admission of the Statements of Robert Olsson and Franklin Meissner*

■ Electro Switch has appealed the district judge's denial of its motion *in limine* which allowed testimony as to statements of Robert Olsson and Franklin Meissner to be entered into evidence.[1] At trial, Ms. Conway testified that in March or April, 1982, she asked her supervisor, William Cravens, for a pay increase. Mr. Cravens sought authorization for the raise from Robert Olsson, the industrial relations manager. Mr. Olsson refused the requested raise, responding that Sandra Conway made enough money and was one of the highest-paid women in the company. Mr. Cravens reported this response to the plaintiff, who testified to it at trial.

Patricia LaRose, a quality control supervisor, testified to a statement made to her by Franklin Meissner, the company's president at the time of Ms. Conway's termination. Ms. LaRose testified that sometime in 1981, she sought and was refused a raise from her supervisor. Ms. LaRose appealed this decision to Mr. Meissner, who, at that time, was her supervisor's superior, but had yet to become the company's president. Ms. LaRose testified that Mr. Meissner responded, "Well, no, I don't think so, Pat. For a woman supervisor, you do very well." The district judge permitted the testimony as to both statements ruling that they were relevant to the "corporate state-of-mind."

Electro Switch appeals the propriety of the district judge's ruling, alleging that the statements were extremely prejudicial to its cause. Electro Switch contests the relevancy of the statements, arguing that the plaintiff presented no evidence to suggest that Mr. Olsson or Mr. Meissner played any role in Ms. Conway's termination apart from preparing the necessary paperwork. The appellant contends that for evidence of a "corporate state-of-mind" to be relevant it must be indicative of the consciousness of the individuals who took the employment action at issue. The appellant claims that admission of the testimony was extremely prejudicial because the statements reflected the only two instances in which one Electro Switch employee mentioned another's gender.

■ Rule 401 of the Federal Rules of Evidence provides that any evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence

---

1. The motion *in limine* filed with the district court concerned only the statement of Robert Olsson. In his argument on the motion, counsel for Electro Switch also addressed the statement of Franklin Meissner, arguing its exclusion on grounds identical to those supporting exclusion of Mr. Olsson's statement. Ms. Conway contends that Electro Switch has waived its objection to the admission of Mr. Meissner's statement because it was not included in the motion *in limine* and counsel for Electro Switch did not voice objection to the district judge's ruling allowing the statements into evidence. Under the best of circumstances, counsel must exercise caution in relying exclusively upon rulings made in connection with pretrial motions *in limine* as the basis for preserving claims of error in the admission and exclusion of evidence. Although Electro Switch may or may not properly have protected the record in this instance, we need not decide the point. Assuming *arguendo* that the objections were properly preserved, they were, for the reasons recounted in the text, without merit.

to the determination of the action more or less probable than it would be without the evidence." This standard affords the trial judge considerable latitude in making discretionary determinations as to relevancy and "[o]nly in exceptional cases will reversible error be found in the district court's determination of the probative value of testimony in a particular case." *United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). Decisions committed to the broad discretion of the trial court will be reversed only upon a showing that the trial judge's ruling manifested an abuse of discretion. *See United States v. Marler*, 756 F.2d 206, 217 (1st Cir.1985); *United States v. Tierney*, 760 F.2d 382, 387–88 (1st Cir.) (district courts have considerable discretion in determining the relevancy of evidence, and this discretion must be respected so long as it "does not stray entirely beyond the pale"), *cert. denied,* — U.S. ——, 106 S.Ct. 131, 88 L.Ed.2d 208 (1985).

■ A claim of discrimination need not be proven solely through direct evidence; circumstantial evidence may support an inference of discrimination. *See United States Postal Service v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1017 (1st Cir.1979). Indeed, discrimination can often be of such a subtle, insidious character that a plaintiff may only be able to offer circumstantial evidence to buttress his or her claim. As this court has ruled, circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff. *See Sweeney v. Trustees of Keene State College*, 604 F.2d 106, 113 (1st Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980); *cf. Lamphere v. Brown University*, 685 F.2d 743,

749–50 (1982) (upholding the admission of statistical evidence of a general discriminatory atmosphere at a place of employment as relevant to a claim that the employer discriminated against the individual plaintiff). Thus, we cannot say that the district court erred in permitting testimony as to the statements of Olsson and Meissner as these statements tend to highlight the atmosphere and institutional state-of-mind present at Electro Switch during the plaintiff's period of employment.

The appellant has argued that the relationship between the Olsson and Meissner statements and the events and actors involved in the plaintiff's termination is too attenuated to support the district judge's assessment of the statements' probative value. Electro Switch challenges the relevancy of the Olsson statement on the grounds that Robert Olsson was not involved in the plaintiff's termination, and that his statement bore no relation to the plaintiff's termination since it was made approximately eight months before the plaintiff left the company. As for the statement of Mr. Meissner, the appellant argues that the connection is even more tenuous. In addition to claiming that Mr. Meissner was not involved in the plaintiff's termination, the appellant notes that the statement was made ten to twenty-two months before the events of October 1982, and that the statement refers to a different subject matter with respect to a different employee who worked in a separate department.

■ It is our view, however, that evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment. The rationale underlying the admission of such evidence militates against its exclusion on those grounds. Evidence of institutional state-of-mind may be presented for the consideration of the trier-of-fact because an employer's willingness to consider impermissible factors such as race, age, sex, national origin, or religion while en-

gaging in one set of presumably neutral employment decisions—in this case, pay scales—might tend to support an inference that such impermissible considerations may have entered into another area of ostensibly neutral employment decisions—here, an employee's termination. While this court has recognized that "proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual," it may be one indication that the reasons given for the employment action at issue were "implicitly influenced" by the fact that the plaintiff was of a given race, age, sex or religion. *See Sweeney*, 604 F.2d at 113. This, of course, is not to say that the relationship between the evidence offered to demonstrate institutional state-of-mind and the alleged discriminatory employment actions might not, in some cases, be too attenuated to support a trial judge's finding that such evidence is irrelevant. In this instance, however, we do not agree with the appellant that the district judge abused his discretion in coming to a contrary conclusion.

Moreover, the record does not support the appellant's assertion that Robert Olsson and Franklin Meissner were not involved in the incidents giving rise to this discrimination claim. While Robert Olsson may not have participated in the decision to merge the sales and customer service positions or in the decision to terminate the plaintiff's employment, we cannot ignore the plaintiff's contention that Electro Switch attempted to disguise Ms. Conway's termination as a resignation. In this piece of legerdemain, Mr. Olsson may have been intimately involved. As the president of Electro Switch at the time of Ms. Conway's termination, Mr. Meissner was in a position to override his subordinates' decision to terminate Sandra Conway's employment. Despite Ms. Conway's pleas to that effect, Mr. Meissner refused to block Ms. Conway's termination. Thus, we cannot say that the evidence of the corporate state-of-mind was here too remote from the events and individuals involved in Ms. Conway's termination to warrant finding that the district judge abused his discretion in permitting testimony as to the statements at trial.

**B. *Denial of Electro Switch's Motion for Judgment Notwithstanding the Verdict and Motion for a New Trial***

After the jury returned its verdict for the plaintiff, Electro Switch moved for judgment n.o.v. and, in the alternative, for a new trial. The district judge denied both motions, and Electro Switch now appeals the district judge's ruling, asserting for each motion the same ground for reversal: that the verdict in favor of the plaintiff was not supported by legally sufficient evidence.

 Our review of a denial of judgment n.o.v. is severely circumscribed. A motion for judgment notwithstanding the verdict should be granted only after a determination that the evidence could lead a reasonable person to only one conclusion. This determination must be made without evaluating the credibility of the witnesses or the weight of the evidence and without attempting to resolve conflicting testimony. *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 607 (1st Cir.1985); *Cazzola v. Codman & Shurtleff, Inc.*, 751 F.2d 53, 54 (1st Cir. 1984); *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir.1980). All inferences must be drawn in favor of the non-moving party, *Wildman*, 771 F.2d at 607, *Hunt v. Rhodes*, 369 F.2d 623, 624 (1st Cir.1966), and if there is substantial evidence supporting the verdict, it is improper for a court to enter judgment notwithstanding the verdict. *Borras v. Sea-Land Service, Inc.*, 586 F.2d 881, 885 (1st Cir.1978).

 Review of a denial of a motion for a new trial is governed by a similarly restrictive standard. Denial of a motion for new trial will be reversed only for an abuse of discretion, *Cazzola*, 751 F.2d at 54; *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 740 (1st Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 and 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983), and the discretion afforded the trial judge is limited from the outset. A trial judge may not grant a motion for a new trial merely because he or she might have reached a conclusion con-

trary to that of the jurors, rather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice. *See Coffran v. Hitchcock Clinic, Inc.,* 683 F.2d 5, 6 (1st Cir.1982), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1983); *Hubbard,* 626 F.2d at 200; *Borras,* 586 F.2d at 887. Noting that in any sex discrimination case, the ultimate issue is whether the defendant intentionally discriminated against the plaintiff on the basis of sex, *see Lamphere,* 685 F.2d at 748; *Sweeney,* 604 F.2d at 108, we turn to examine the evidence presented at trial to determine whether the defendant's allegations of error are correct.

Sandra Conway was employed by Electro Switch for approximately sixteen and one-half years. By most accounts, she was a hard-working, competent, loyal employee. Ms. Conway had received twenty-two merit raises during her career with Electro Switch, the latest raise having taken effect on June 7, 1982, less than five months before her severance from the company.

To establish the gender bias institutionalized at Electro Switch, the plaintiff offered evidence that one hundred percent of the company's top management was male and that no female employee had ever served on the company's Advisory Committee. The plaintiff offered the statements of Robert Olsson and Franklin Meissner, discussed *supra* at Part A, to this end as well. The plaintiff submitted a cafeteria lunch schedule which assigned the all-male management and engineering personnel to overlapping time slots and separated several male supervisors from their departments to eat with the management shift. Henry Peters, the national sales manager, testified that golf games among the men in the sales department were not uncommon at Electro Switch, and he admitted that he had never asked any of the department's women to join him on the fairways.

Henry Peters replaced the plaintiff with James Kaliris, an employee with five and one-half years experience with Electro Switch, one and one-half of those years in sales. Despite his relative inexperience, Mr. Kaliris earned approximately $60 more per week than Ms. Conway on the date he filled her job; he received an additional pay raise within a month after assuming Ms. Conway's duties. Mr. Kaliris played golf with Mr. Peters approximately twice a month during the golf season.

It was customary policy at Electro Switch, when filling a job vacancy, for managers to post the job description on a bulletin board to invite employee applications. Ms. Conway's position was never listed on this board, and Henry Peters testified that prior to approaching Ms. Conway about the change in her responsibilities, he had already discussed the position with Mr. Kaliris. Prior to his discussion with Ms. Conway, Mr. Peters had also spoken with Alan Carlson about assuming the duties of customer service supervisor, a position above the plaintiff's on the corporate ladder. At that time, Alan Carlson had been employed in Electro Switch's sales department for approximately one year and had been employed for three to four years in customer service elsewhere. Mr. Peters testified that despite the plaintiff's many years in the customer service department, he never considered offering this supervisory position to her.

The plaintiff and defendant presented conflicting testimony as to the events immediately surrounding Ms. Conway's termination, and they offered different explanations for departure. The defendant offered testimony to the effect that the plaintiff had declined the transfer to sales because she feared her inability to perform her new duties and that she had expressed her intention to leave the company when the departmental transfer was completed. The plaintiff testified that she expressed no intention of resigning, and that her immediate reluctance to accept the transfer resulted from her managers' unwillingness to specify the nature of her new duties.

After considering this evidence, we cannot say that a reasonable person could only find that the defendant did not discriminate against the plaintiff on the basis of her sex; nor do we find that a verdict

for the plaintiff could only have been based upon speculation, conjecture, or some other legally insufficient basis. To be sure, much of the proffered evidence was circumstantial; however, we have already adverted to the fact that circumstantial evidence may support an inference of discrimination. *Aikens*, 460 U.S. at 714 n.3, 103 S.Ct. at 1481 n.3; *Loeb*, 600 F.2d at 1017. It was well within the province of the jury to infer that Electro Switch fostered an atmosphere of discrimination that infected its personnel decisions. The jury could also have found that Henry Peters was more comfortable, socially and professionally, with the men in his department, a fact which manifested itself in his employment decisions. This favoritism explains Mr. Peters' offer of Ms. Conway's position and that of her supervisor to men less experienced than she. The discrepancy between Mr. Kaliris' and Ms. Conway's salaries supports an inference of sex bias in the department, and Mr. Kaliris' acceptance of Ms. Conway's position and his almost immediate raise would also support the jury's inference that Ms. Conway's position was not largely clerical as the defendant's witnesses stated, but in fact, carried some significant responsibilities. This finding would naturally implicate the statistics showing that one-hundred percent of the Electro Switch management was male and would support an inference that the management preferred to have a man in Ms. Conway's position.

Moreover, the jury was entitled to resolve the conflicting testimony as to the events surrounding Ms. Conway's termination according to its own evaluation of the credibility of the witnesses introduced to present each party's version of the controversy. It is not for us to second guess such a resolution on review. Thus, we must conclude that the trial court correctly denied the appellant's motions for judgment notwithstanding the verdict and for a new trial.

### C. *Calculation of Interest at Eight Percent*

In his final memorandum, the district judge ordered Electro Switch to pay interest at the eight-percent federal judgment rate on the portion of the damage award that comprised Ms. Conway's lost earnings and benefits from October 21, 1982 (the first full day after her termination) through July 2, 1986 (the date of final judgment). The district judge ordered the interest payment to fully compensate Ms. Conway for the lost use of her earnings and benefits during this time. Ms. Conway had argued that the interest should be calculated at the rate of twelve percent per annum, the rate provided by the Massachusetts civil interest statutes for actions in tort or contract. The court below declined to use the higher rate, stating that chapter 151B created a statutory cause of action not cognizable as either tort or contract, and thus not mandating a twelve-percent interest augmentation pursuant to the Massachusetts interest statutes.

On appeal, the plaintiff has renewed her argument that the interest awarded on the lost earnings and benefits to the date of final judgment should be calculated at the rate of twelve percent per annum as provided by Mass.Gen.Laws Ann. ch. 231 § 6B and 6C (West 1985) [2] for actions sounding

---

**2.** Mass.Gen.Laws Ann. ch. 231 § 6B (West 1985) states:

In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action even though such interest brings the amount of the verdict or finding beyond the maximum liability imposed by law.

Mass. Gen.Laws Ann. ch. 231 § 6C (West 1985) provides:

In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per

in tort or contract. The crux of the plaintiff's argument is that chapter 151B creates a cause of action sounding both in tort and contract, therefore, the plaintiff is entitled to interest calculated at the higher rate. We disagree and affirm the district court's calculation of interest at the federal judgment rate of eight percent.

It is certainly true that Massachusetts courts would uphold the payment of interest on damages recovered pursuant to chapter 151B at the twelve-percent rate prescribed in the civil interest statutes; the Massachusetts Commission Against Discrimination (MCAD) has uniformly awarded interest to supplement damages recovered under chapter 151B. *See Palter v. Merchants Ins. Group*, 7 MDLR 1599, 1602 (1985); *Heath v. Greenfield Police Dep't.*, 6 MDLR 1880, 1891 (1984); *Foran v. A.J. Cunningham Packing Corp.*, 6 MDLR 1453, 1465 (1984); *Medeiros v. Louie's on the Wharf, Inc.*, 6 MDLR 1135, 1150 (1984); *Lumley v. Flynn*, 6 MDLR 1331, 1338 (1984); *Schabazz v. Niles Co.*, 5 MDLR 1297, 1314 (1983). MCAD has clearly indicated that its authority to augment a chapter 151B damage award with prejudgment interest derives not from the nature of the action the statute creates but rather from the Commission's broad discretion to fashion remedies to best effectuate the goals of the statute. *See Palter*, 6 MDLR at 1601–02; *Medeiros*, 6 MDLR at 1150–51. As the Commission has stated:

> The Commission has never contended that its authority to award interest is derived from [the civil interest statutes]. Instead, the Commission's authority is grounded in M.G.L. c. 151B § 5, which authorizes us to take, after a finding of unlawful discrimination, "such affirmative action, including but not limited to, hiring, reinstatement or upgrading of

employees, with or without back pay … as in the judgment of the Commission will effectuate the purposes of this Chapter.…" … [I]t is the Commission's position that this language authorizes an award of interest as part of the remedy when it is necessary to make the Complainant whole.

*Medeiros*, 6 MDLR at 1150–51. Although the Commission does not contend that chapter 151B creates an action sounding in tort, it is the Commission's established practice, in the exercise of its discretion, to use § 6B—the tort provision—"for guidance in determining the rate, the assessment period, and the accrual method for its own interest award." *Palter*, 7 MDLR at 1602.

 In analogous contexts, the Massachusetts courts have upheld interest awarded under statutes that did not specifically authorize such awards, and would, in all likelihood, affirm an interest award pursuant to chapter 151B. In *School Comm. of Newton v. Labor Relations Comm'n*, 388 Mass. 557, 447 N.E.2d 1201 (1983), the Supreme Judicial Court affirmed the Labor Relations Commission's interest allowance on a back pay award, noting that the decision to award interest was within the discretion afforded the Commission pursuant to the Massachusetts labor relations statute, Mass.Gen.Laws ch. 150E § 11. *Id.* at 579, 447 N.E.2d at 1215. In its remedial provision, the Massachusetts labor relations statute is virtually identical to chapter 151B and we are convinced that when faced with the question at issue here the Supreme Judicial Court would reiterate its conclusion that "[t]he question of the award of interest is a policy question the Legislature committed to the Commission's discretion." *Id.*, 447 N.E.2d at 1215.[3] *See*

---

annum from the date of the commencement of the action.

**3.** In *School Comm. of Newton v. Labor Relations Comm'n*, the Supreme Judicial Court rejected the notion that *Broadhurst v. Director of the Div. of Employment Sec.*, 373 Mass. 720, 369 N.E.2d 1018 (1977), cited by Electro Switch, controls the outcome of any inquiry into interest available under statutes similar to the one in question here. In *Broadhurst*, the Massachusetts

court disallowed interest awarded pursuant to a Massachusetts statute providing for payment of overdue unemployment benefits. *Id.* at 725, 369 N.E.2d at 1023. The court denied the interest award on the grounds that the detailed statutory scheme did not provide for interest and that the state could only be held to have waived its sovereign immunity and established rights to recovery to the extent provided in the statute. *Id.* at 726–27, 369 N.E.2d at 1022–23. In distinguishing *Broadhurst*, the Supreme Judicial

also, *Board of Selectmen of Framingham v. Boston Mun. Court,* 11 Mass.App. 659, 418 N.E.2d 640 (1981) (adding interest to a back-pay award in a civil service proceeding).

We recognize that an award of prejudgment interest is a substantive aspect of a remedy formulation which mandates the application of state law to state-law claims in federal court. *Valle v. Joint Plumbing Indus. Bd.,* 623 F.2d 196, 205 n. 19 (2d Cir.1980); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 692 n. 13 (2d Cir.1983); *cf. Jennings v. Dumas Pub. School Dist.,* 763 F.2d 28, 33 (8th Cir.1985) (law of the state where the action arises governs whether a party in a diversity action is entitled to prejudgment interest). Yet, although we have concluded that prejudgment interest on a chapter 151B claim is available at the state rate, as a matter of discretion, in the Massachusetts courts, the case before us does not present a situation where the plaintiff brought suit under chapter 151B alone, or prevailed only on her state-law claim. The plaintiff also prevailed on her Title VII claim in recovering lost back pay and benefits, therefore, it was appropriate for the district court to consider applicable federal standards in fashioning an interest award.

As a matter of federal law, prejudgment interest is a discretionary item of compensation. *See Kolb v. Goldring,* 694 F.2d 869, 875 (1st Cir.1982); *Segal v. Gilbert Color Systems, Inc.,* 756 F.2d 78, 84 (1st Cir.1984). As this court has stated:

> The determination of the amount of damages is, absent legal error, a matter for the finder of fact. It cannot be said that prejudgment interest … must, as a matter of law, be part of the damages awarded in a Title VII case. The question of whether [it] is necessary to make the plaintiff whole is within the discretion of the trial court.

Court noted that the broad labor relations statute, delegating considerable discretion to the Labor Relations Commission to fashion remedies for labor law violations, was not controlled in its interpretation by a statute prescribing

*Earnhardt v. Puerto Rico,* 744 F.2d 1, 3 (1st Cir.1984). It was thus the prerogative of the district court, as a matter of state and federal law, to formulate an interest award which it believed would make the plaintiff whole. Although the federal judgment rate is lower than the rate available under the Massachusetts civil interest statutes, the choice of the appropriate percentage was committed to the district judge's discretion and we cannot say that the court's adoption of a lower but equally applicable interest rate by itself constitutes an abuse of the court's considerable discretion. Moreover, we note that the district court calculated the interest award from the time of the plaintiff's termination, thereby providing for a longer accrual period than Massachusetts law allows and tempering somewhat the effect of the eight-percent calculation. *See, e.g., Palter,* 7 MDLR at 1613 (calculation of interest begins with commencement of the action); *Bowen v. Colonnade Hotel,* 4 MDLR 1007, 1032 (1982) (to the same effect); Mass.Gen. Laws Ann. ch. 231 § 6B (West 1985) (interest is calculated from the date the action commences). Finally, the plaintiff has not indicated that the district court's award has left her less than whole, and absent any evidence to that effect, we can only conclude that the court's award fulfilled its intended remedial purpose and need not be disturbed by us.

**D.** *The Front Pay Award and Interest*

In his post-trial order, the district judge affirmed the jury's award of $56,492.00 to the plaintiff for lost future earnings and benefits, ruling that this form of damages, known as front pay, is recoverable under Mass. Gen. Laws ch. 151B. Electro Switch has appealed the front pay award on the grounds that the plaintiff did not seek reinstatement to her former position as part of her request for relief, thus, she is not entitled to a damage award in lieu thereof. Furthermore, Electro Switch contends that the plaintiff failed to prove the necessary

detailed proceedings and remedies as outlined in the unemployment security statute. *See School Comm. of Newton,* 388 Mass. at 580, 447 N.E.2d at 1215.

predicate to a front pay award: that reinstatement to her former position was either impracticable or impossible.

While affirming the jury's award of front pay, the district court declined to supplement the damage award with interest calculated on the portion of the front pay that represented lost earnings and benefits for the period subsequent to the final judgment order. The court opined that neither the make-whole purposes of chapter 151B nor the usual compensatory rationale for an interest award justifies calculating interest on the front pay, since Ms. Conway would not lose the use of the money as investment principal. Because the jury awarded front pay pursuant to Massachusetts law, our inquiry must focus on the applicable state standards.[4]

 Mass. Gen. Laws ch. 151B § 5 provides in its relevant part that, upon finding that an employer had engaged in a discriminatory employment practice as defined in the statute, the Massachusetts Commission Against Discrimination may

> take such affirmative action, including but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this chapter....

Mass.Gen.Laws Ann. ch. 151B § 5 (West 1982). Whether this broad remedial provision authorizes an award of front pay to a victim of discrimination is an open question of Massachusetts law, and lacking guidance from the Massachusetts courts on this important aspect of discrimination law, we are convinced that we have no choice but to certify the question of front pay to the Massachusetts Supreme Judicial Court. The question of interest on front pay must, of course, be certified as well. Accordingly, we hereby certify the questions of front pay and interest on front pay to the Massachusetts Supreme Judicial Court pursuant to S.J.C. Rule 1:03, as amended, 382 Mass. 700 (1981).[5]

## CERTIFICATION

There are involved in a case now before this court two questions of Massachusetts law which will be determinative in part of the cause now pending and as to which we have found no controlling precedent in the decisions of the Supreme Judicial Court of the Commonwealth. Hence, on our own motion, we certify the following two questions of law to the Supreme Judicial Court of the Commonwealth pursuant to S.J.C. Rule 1:03.

### *Questions of Law*

1. Massachusetts General Laws Annotated ch. 151B, § 5 (West Supp. 1987) provides in relevant part that, upon a finding that an employer has violated section 4, subd. 1, of Mass. Gen. Laws ch. 151B, the Massachusetts Commission against Discrimination may "take such affirmative action, including but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this chapter...."

Does this provision authorize an award for lost future earnings and benefits, also referred to as "front pay," and, if so, subject to what conditions?

---

**4.** The plaintiff's complaint sought damages for "lost earning capacity" under federal law—Title VII and the ADEA—as well as under state law. The district court interpreted this as a claim for future earnings and benefits. The court granted the defendant's motion for summary judgment with regard to any such damages claimed under federal law, ruling that neither Title VII nor the ADEA authorized the award of compensatory damages. The court's order was issued before our decision in *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985), in which we held that future damages are available under the ADEA. In any event, the plaintiff has not appealed the denial of front pay on her federal claims, and thus, the issue is not before us.

**5.** We note, as a final matter, that the jury was not instructed to reduce its award of front pay to present value, thus, if the Massachusetts Supreme Judicial Court interprets Chapter 151B to allow for recovery of front pay, the district court must order a new trial on the front pay question.

2. If the answer to question one is "Yes," then answer the following question: Is interest to be added to such an award and, if so, at what rate and when does it commence to run?

### Factual Background

The plaintiff, Sandra Conway, sued defendant, Electro Switch Corp., in the United States District Court for the District of Massachusetts. Plaintiff alleged that defendant and four of its employees discriminated against her because of her sex and age. She alleged violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e–17 (1982), the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634 (1982 & Supp. III 1985), and violations of Mass. Gen. Laws ch. 151B and Mass. Gen. Laws ch. 12, § 11I.

In a pretrial ruling, the district court held that "front pay" was not available under either of the two federal statutes. Plaintiff did not appeal that ruling.

The case was tried to a jury which found that plaintiff was discharged by defendant and that her sex, but not her age, was a determinative factor in defendant's decision to discharge her. The jury found in favor of defendant on plaintiff's claim under Mass.Gen.Laws ch. 12, § 11I.

The jury awarded plaintiff $32,243 for back pay (loss of past earnings and benefits) and $56,492 for front pay (loss of future earnings and benefits).

The district court upheld the front pay award as recoverable under Mass. Gen. Laws ch. 151B, but refused to award interest on the portion of the front pay that represented lost earnings and benefits for the period subsequent to the final judgment and order. The district court did not instruct the jury to reduce its award of front pay to present value, nor did it do such discounting itself.

We forward as an appendix the briefs and appendix furnished by the parties and a copy of our opinion.