The PORT ARTHUR HOUSING
FINANCE CORPORATION

v.

UNITED STATES of America, U.S. Department of Commerce, the National Oceanic and Atmospheric Administration, and John A. Knauss, Undersecretary of the National Oceanic and Atmospheric Administration.

No. 1:90–CV–0020.

United States District Court,
E.D. Texas,
Beaumont Division.

June 18, 1991.

Carl A. Parker, Law Offices of Carl A. Parker, Port Arthur, Tex., for plaintiff.

Olen Kenneth Dodd, Asst. U.S. Atty., Beaumont, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

The defendants have filed a motion to dismiss this cause on the basis that the plaintiff lacks standing. As is more fully set forth below, the defendants' motion is GRANTED.

### I. FACTUAL BACKGROUND

This case arises under the Coastal Zone Management Act of 1972, as amended, 16 U.S.C. § 1451, *et seq.*, particularly Section 308 of the Act, 16 U.S.C. § 1456a (CZMA). This section established the Coastal Energy Impact Program which provides financial assistance to coastal states. This assistance allows local governments to fund infrastructure improvements necessitated by energy development projects. Section 308(a)(1)(D) of the CZMA, 16 U.S.C. § 1456a(a)(1)(D) authorizes loans:

> ... to coastal states and units of general purpose local governments to assist such states and units to provide new or improved public facilities or public services which are required as a result of coastal energy activity.

Regulations implementing section 308(a)(1)(D) appear at 15 C.F.R. § 931.40, et seq.

The overall loan agreement underlying this dispute involves six entities (1) NOAA; (2) The Port Arthur Housing Finance Corporation (PAHFC); (3) two development companies, New Town in Town, Inc., and Park Central Development Corporation (the Developers); (4) a loan-servicing bank, Park Commercial Investments, Inc. (Park Commercial); (5) a trustee bank, initially the First National Bank of Port Arthur, but currently Bank One, Texas, N.A. (Trustee); and (6) the Department of Housing and Urban Development (HUD).

The documents involved are: (1) the loan agreement; (2) the Service and Agency Agreement between PAHFC, Park Commercial and the Trustee (S & A Agreement); (3) the Trust Agreement between the PAHFC, the Developers, Park Commercial and the Trustee; (4) the loan agree-

ment between PAHFC and New Town in Town; and (5) the loan agreement between PAHFC and Park Central.

Pursuant to the loan agreement, NOAA loaned $6,469,423.00 to PAHFC. In turn, PAHFC loaned those funds in two portions to the Developers, $4,993,000.00 to New Town in Town, and $1,387,900.00 to Park Central. The money from NOAA was actually deposited with Park Commercial Investments, Inc., because it was an FHA insurable mortgagee and PAHFC was not. Pursuant to the S & A Agreement, Park Commercial serviced the two loans in its role as a commercial lender. In return for advancing the loan monies to the Developers, Park Commercial accepted promissory notes for the amounts involved, which were secured by mortgages on the Developers' properties. Park Commercial obtained mortgage insurance on the notes from HUD under Title X of the Federal Housing Act (FHA Insurance). Park Commercial's duties included receiving payments on the notes from the Developers and remitting funds to the Trustee; notifying the Trustee and NOAA of any default; and remitting any FHA Insurance proceeds to the Trustee.

Pursuant to the Trust Agreement, to which the Developers were parties, PAHFC and Park Commercial assigned all of their right, title and interest in the notes and mortgages, in payments made on the notes by the Developers, and in the FHA Loan Insurance proceeds, to the Trustee for the benefit of NOAA.

On April 28, 1987, NOAA denied PAHFC's request for repayment assistance. On August 20, 1987, PAHFC appealed the denial of the repayment assistance which was again denied on December 7, 1989. This suit followed in which PAHFC appeals the administrative denial of its request for repayment assistance.

## II. HIGHLIGHTS OF THE LOAN DOCUMENTS

Under CZMA Section 308(d)(1),

[N]o such loan shall require as a condition thereof that any such state or unit pledge its full faith and credit to the repayment thereof.

16 U.S.C. § 1456a(d)(1). Accordingly, the NOAA loan and related agreements do not contain any provisions indicating that PAHFC is obligated to repay the loan, except from revenues obtained from the sale of the Developers' property improved under the loan and from the proceeds from the FHA Insurance. Under the PAHFC note dated July 27, 1981, PAHFC promised to pay back the loan to NOAA,

... but solely from the source and in the manner hereinafter provided ...

\* \* \* \* \* \*

This Note is secured by an assignment and pledge of the moneys to be received by the Issuer from or in connection with the Residential Development Notes, including any FHA mortgage insurance proceeds received in connection therewith and by a pledge of the moneys and securities held in the funds established under the Trust Agreement. The Note is not a general obligation of the Issuer but is a limited, special obligation of the Issuer payable solely from the revenues, funds and assets of the Issuer pledged under the Trust Agreement and not from any other revenues, funds or assets of the Issuer.

Under the NOAA loan to PAHFC, PAHFC is obligated to adopt the Trust Agreement and make sure that the payments it received from the Developers and sales of FHA insurance are transferred to the Trustee for NOAA's benefit. Again, there is no indication of any other source of revenues or responsibilities.

Under the terms of the Trust Agreement, PAHFC, referred to therein as "Borrower," pledges all right, title, and interest from the Developers' payments on Title X loans and any FHA Insurance benefits. Again, there is no reference to or indication of any other source of revenue or responsibilities. In the Loan Agreement the Developers assume the obligation to comply with the terms of the Trust Agreement, and obligate themselves to provide additional funds to the Trustee if a deficiency arises. However, nowhere in the Loan Agreement

is PAHFC (Lender therein) required to pay anything. Bond counsel for PAHFC (Issuer therein), opined in July 1981 that:

> Pursuant to the Act, the Note is a limited obligation of the Issuer, payable solely from the revenues, receipts, and resources of the Issuer pledged and assigned to the Trustee under the Trust Agreement, and not from any other revenues, funds, or assets of the Issuer, and the Note does not constitute an indebtedness, liability, general or moral obligation, or a pledge of the faith or loan of credit of the City of Port Arthur, the State of Texas, or any other municipality or political subdivision thereof, within the meaning of any constitutional provision or statutory limitation, and does not constitute a charge against the general credit or taxing powers or any such entity.

The Certificate of Resolution states:

> [T]he Note and the interest thereon shall be limited obligations of the Issuer payable solely from the revenues, funds and assets pledged under the Trust Agreement to secure payment of the Note and the interest thereon, and under no circumstances shall the Note be payable from any other revenues, funds, assets, or income of the Issuer.

NOAA was thus limited in its remedy for default to revenue from the sale of the land and FHA insurance.

## III. THE LAW

The current posture of the case is that the defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b). However, since matters outside the pleadings have been presented to and not excluded by the court, the court treats the defendants' motion as one filed under Fed.R.Civ.P. 56.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *St. Amant v. Benoit,* 806 F.2d 1294 (5th Cir.1987); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of proof in a motion for summary judgment rests on the movant. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278 (9th Cir.1982). When disposing of a motion for summary judgment, the facts before the court must be viewed in a light most favorable to the non-moving party. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Also, all justifiable inferences are to be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court finds that after reviewing all the documents and exhibits on file in this matter, there is no genuine issue as to any material fact. This dispute is ripe for summary judgment.

Article III of the Constitution limits the judicial power of the United States to the resolution only of "cases" and "controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757–58, 70 L.Ed.2d 700 (1982). From the "case" or "controversy" requirement, the Supreme Court has held that a litigant must have "standing" to bring an action in federal court. *Id.* For a litigant to show that he possesses "standing," he must show (1) "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant;" (2) "that the injury fairly can be traced to the challenged action;" and (3) that the injury "is likely to be redressed by a favorable decision." *Id.* at 472, 102 S.Ct. at 758. A court should consider three prudential concerns in determining standing:

> (1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue;
>
> (2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and

**4**

(3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.

*Cramer v. Skinner,* 931 F.2d 1020, 1024 (5th Cir.1991) (citing *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir. 1987); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College,* 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).

In the pending cause it is apparent (1) that there is not before the court a "case" or "controversy." and (2) that the plaintiff, the PAHFC, lacks the requisite standing to maintain this action. This is so because the record is clear: the PAHFC is not liable to the defendants in the event of its default. The Federal Housing Administration (FHA), however, may be liable through its issuance of Title X insurance. Were the defendants to declare the PAHFC in default on its note and foreclose on the mortgage, the PAHFC would not suffer an actual injury. Here, the PAHFC is attempting to assert the legal rights and interests of a third party, the FHA.

Accordingly, pursuant to Fed.R.Civ.P. 12(b), it is hereby ORDERED that the defendants' motion to dismiss is GRANTED.