**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, Defendant.**

Civ. A. No. 94–1658 (JR).

United States District Court, District of Columbia.

March 24, 1995.

John A. Edmond, Guerrieri, Edmond & James, Washington, DC, for plaintiff.

Jonathan I. Saperstein, Nat. R.R. Passenger Corp., Office of General Counsel, Washington, DC, for defendant.

### *OPINION*

ROBERTSON, District Judge.

Before the Court in this labor-management dispute are cross motions for summary judgment presenting the narrow question whether a board duly appointed to arbitrate a labor-management dispute exceeded its jurisdiction when two of its three members issued an order clarifying an earlier award of the same board.

Plaintiff United Transportation Union (UTU) represents train service employees. In 1992, UTU and defendant National Railroad Passenger Corporation (Amtrak) signed agreements giving UTU the benefit of any wage package the Brotherhood of Locomotive Engineers (BLE) might eventually negotiate with Amtrak, provided that UTU give Amtrak the benefit of any work rule relief the BLE and Amtrak might agree upon.

When the BLE and Amtrak concluded their labor negotiations later in 1992, and the BLE wage package was richer than the UTU wage package, UTU elected to exercise its option. The agreement between Amtrak and BLE provided for the modification of a number of work rules, one of which—the subject of the present dispute—permitted Amtrak to combine "extra boards" for engineers and assistant engineers.[1]

Amtrak and UTU were not able to agree about how the Amtrak/BLE agreement on combined extra boards for engineers should be applied to the train service employees represented by UTU. The parties agreed to arbitrate the point. The arbitration agreement created a three-member board, called Public Law Board No. 5347 (PLB 5347), whose members were a representative of UTU, a representative of Amtrak, and a neutral person.

PLB 5347 issued an Opinion and Award on July 16, 1993, resolving most of the issues but remanding for further negotiation the issue of which employees would be "grandfathered" to receive a conductor's higher guarantee pay on the combined extra boards. When UTU and Amtrak were not able to reach agreement, PLB 5347 decided the outstanding issue in a Supplemental Opinion and Award dated November 8, 1993.

A dispute then arose about the meaning of the Supplemental Opinion and Award. UTU took the position that the combined extra boards formed pursuant to the Supplemental Opinion and Award should be characterized as assistant passenger conductor extra boards so as to fit existing procedures: Amtrak would first offer any vacancy to senior, qualified assistant conductors on the crew; if none chose to fill the vacancy, Amtrak could assign the junior, qualified member of the crew to the vacant position and then call an extra board employee to fill the position vacated by the junior member. Amtrak, on the other hand, took the position that the combined extra boards were not subject to those procedural requirements and that the rule established by the Supplemental Opinion and Award permitted Amtrak to call employees assigned to the extra boards for all protected vacancies.

Amtrak sought to reconvene PLB 5347 in order to resolve the dispute. UTU refused to join in Amtrak's request. On May 4, 1994, the neutral member of PLB 5347 scheduled a meeting of the Board. The UTU member declined to participate. The neutral member, joined by the Amtrak representative, then issued an Interpretation to the Board's Opinion and Award and the Board's Supplemental Opinion and Award (Interpretation) on May 16, 1994.[2] The Interpretation concluded that the newly created combined board was a "generic extra board," properly characterized as both an assistant passenger conductor extra board and a passenger conductor extra board. The ruling was that the combined board was not subject to the existing procedures that limited use of assistant passenger conductor extra boards and that Amtrak could draw directly from the combined board without first offering vacancies to senior, qualified crew members.

The Amtrak representative and the neutral member of the Board invoked paragraph H of the parties' arbitration agreement in issuing the Interpretation. Paragraph 4 provides in relevant part:

> In case a dispute arises involving an interpretation or application of the award, the Board, upon request of either party, shall interpret the award in light of the dispute. . . .

The question raised by these cross motions is whether the Interpretation issued on May 16, 1994, was indeed "an interpretation . . . of the award," or whether, as UTU maintains, it was an impermissible, substantive work rule amendment. UTU argues that PLB 5347 was required to confine itself to the matter submitted to it by the arbitration agreement

---

1. An "extra board" is a list of employees who are required to make themselves available to fill vacancies caused when employees do not report to work because of vacation, sickness, or unexcused absence. Individuals working the "extra board" receive a guarantee payment for a minimum number of hours per week, whether they actually work those hours or not.

2. UTU does not dispute that the neutral member and the Amtrak representative, without the UTU representative, were a quorum of PLB 5347.

and that the May 16 Interpretation exceeded PLB 5347's jurisdiction "by effectively establishing and imposing a new work rule upon the parties." Amtrak argues that the Board properly confined itself to matters within its jurisdiction.

 It is well established that public law boards have primary and exclusive jurisdiction over employee grievances involving the interpretation or application of collective bargaining agreements, *Air Line Pilots Association, International v. Delta Air Lines,* 863 F.2d 87, 88–89 (D.C.Cir.1988), and that a public law board order may only be set aside for non-compliance with a statute, for fraud or corruption, or "for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction...." 45 U.S.C. § 153 First (q). That provision means "just what it says," *Union Pacific RR v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), and the scope of judicial review of public law board decisions is said to be "among the narrowest in the law." *Diamond v. Terminal Ry. Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970).

But, petitioner argues, it is also well settled that if an award or interpretation does not "draw its essence" from the agreement involved in the dispute, the reviewing court has no choice but to set the award aside, *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 597, 80 S.Ct. 1347, 1361, 4 L.Ed.2d 1409 (1960). Petitioner relies heavily on *Northwest Airlines, Inc. v. Air Line Pilots Association International,* 530 F.2d 1048 (D.C.Cir.) *cert. denied* 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

 The "essence" of the agreement involved in this dispute is that combined extra boards would be established for train service personnel, as they had been for engineers. The disagreement was about details:

> [A]lthough the parties concur that both on and off-corridor passenger conductor and assistant passenger conductor extra boards can be combined, they disagree over who will be 'grandfathered' into a weekly extra board guarantee predicated on 40 hours at the passenger conductor pay rate inasmuch as the weekly guarantee attached to the combined boards will be 40 hours at the assistant passenger conductor pay rate.

*United Transportation Union v. National R.R. Passenger Corp.,* Public Law Board No. 5347, Award and Order at 8 (1993). The interpreting order in question grew directly from the parties' voluntary resort to the Board to resolve the "grandfathering" issue. As the neutral arbitrator put it, UTU "was the recipient of substantial wage increases in exchange for certain work rule modifications. The instant controversy is inextricably tied to one, if not the most important modification, that is the combining of conductor extra boards."

The case at bar is not controlled by *Northwest Airlines.* In that case, an arbitration board rendered a decision on the mistaken assumption that the parties had stipulated agreement on a major issue in the dispute. The award "drew its essence," not from the collective bargaining agreement, but from the assumed stipulation, which did not exist. The court in *Northwest Airlines* reasoned that the policies requiring deference to substantive decisions by arbitrators are inapplicable where an arbitrator's decision is induced by a mistake of fact. *Id.* at 1050. No such mistake of fact appears of record here.

 Moreover, in this case, unlike the *Northwest Airlines* case, the arbitrators carefully considered whether they had jurisdiction before proceeding with their Interpretation. Deference is due to that determination. *See Pack Concrete, Inc. v. Cunningham,* 866 F.2d 283, 285 (9th Cir.1989). So long as the Board was "arguably interpreting the labor agreement," its determination of its own jurisdiction must stand. *CSX Transportation, Inc. v. United Transportation Union,* 950 F.2d 872, 877 (2d Cir.1991); *Brotherhood of Locomotive Engineers v. Atchison T & SF Ry. Co.,* 768 F.2d 914, 921 (7th Cir.1985).

An order will issue denying United Transportation Union's motion for summary judgment and granting National Railroad Passenger Corporation's motion for summary judgment.

# ORDER

For reasons stated in an opinion issued this day, it is this 24th day of March 1995,

**ORDERED** that:

1. Plaintiff United Transportation Union's motion for summary judgment [# 9] is denied.

2. Defendant National Railroad Passenger Corporation's motion for summary judgment [# 8] is granted, and the complaint is dismissed.