Parella, et al. v. RI Retirement Brd. CV-96-434-M   03/31/97
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Gaetano Parella, Mildred Tantimonaco,
John Gilgun, Helena McDermott, and
Delores Ferry, on behalf of themselves
and others similarly situated

        Plaintiffs

v.                                          N.H. Civil No. 96-434-M
                                            R.I. Civil No. 95-358

Retirement Board of the Rhode
Island Employees' Retirement
System, et al.

_____Defendants.


                            **O R D E R**


        In 1994 the State of Rhode Island and the Internal Revenue

Service entered into an agreement aimed at preserving the

qualified trust status of the Employees' Retirement System of the

State of Rhode Island ("ERS").  See 26 U.S.C. § 401(a).  Pursuant

to that agreement, the Rhode Island Legislature capped state

legislators' (both present and past) annual pensions at $10,000 —

the maximum amount tax qualified pension plans were then

permitted to pay under 26 U.S.C. § 415(b).  See R.I. Gen. Laws

§§ 36-8-20(e) and 36-10-10.1(e) (the "Act").  The Act became

effective in July, 1995.

Plaintiffs are members of a class consisting of retired Rhode Island legislators and surviving spouses of legislators who, prior to July 1995, were receiving annual retirement benefits in excess of $10,000. They contend that the Act unlawfully deprives them of vested retirement benefits in excess of $10,000 a year. Specifically, they claim that the Act unlawfully impairs their contract rights and deprives them of property without due process of law and just compensation, in violation of the United States Constitution.

Seeking to enjoin enforcement of the Act's $10,000 per year limitation, plaintiffs brought this action in the United States District Court for the District of Rhode Island in July of 1995, naming as defendants the Retirement Board of the Rhode Island Employees' Retirement System (the "Board") and Nancy Mayer and Joann Flaminio, in their official capacities. See 42 U.S.C. § 1983. The district court denied plaintiffs' request for an order temporarily restraining defendants from implementing or enforcing the Act and, following an evidentiary hearing, the court denied plaintiffs' request for a preliminary injunction, concluding that plaintiffs had failed to demonstrate that they would suffer irreparable injury in the absence of a preliminary

2

injunction.[1]  The court noted, however, that it believed plaintiffs were likely to prevail on the merits.  Shortly thereafter, the case was transferred to this district upon recusal of the judges in the District of Rhode Island.

In August of 1996 Congress enacted the Small Business Job Protection Act of 1996 which, among other things, amended § 415 of the Internal Revenue Code retroactively to December 31, 1994. The parties agree that the amendments to § 415 permit ERS and the Board to reinstate plaintiffs' full retirement benefits and reimburse plaintiffs all amounts which were withheld pursuant to the Act, without risk that such payments might jeopardize ERS's federal tax status.  Accordingly, on September 6, 1996, plaintiffs filed a motion for interim relief, seeking an order compelling defendants to resume paying each class member the full vested monthly retirement benefit to which he or she is entitled and to reimburse each class member for the retirement benefits

---

[1]  Because the court found that defendants had the financial ability to compensate plaintiffs if plaintiffs should ultimately prevail, it concluded that they were not likely to suffer "irreparable injury."  Implicit in that finding is the notion that defendants could and would compensate plaintiffs fully for the harm they suffered, if plaintiffs prevailed.  Presumably, such full and adequate compensation would include the payment of interest for the period of time during which defendants wrongfully withheld plaintiffs' vested pension benefits.  As will be seen, it is that obligation to pay interest which is currently at issue.

3

which were withheld during the pendency of this litigation. Defendants did not oppose the requested relief. Approximately two months later, defendants resumed paying plaintiffs their full vested monthly retirement benefits, and paid all past benefits which had been withheld.

The parties' basic dispute has, therefore, been resolved and plaintiffs' request for prospective injunctive relief is moot. Plaintiffs now move for an order compelling defendants to pay them additional compensation, in the form of prejudgment interest. They claim that such an award is necessary to fully and adequately compensate them for the harm they suffered when, prior to October of 1996, defendants wrongfully withheld their annual pension benefits in excess of $10,000. Defendants object, asserting that the court may not award prejudgment interest against a state in a § 1983 action when the plaintiffs' claims for injunctive relief are moot and there is no continuing constitutional violation. The legally significant facts are undisputed and the parties agree that the issues presently before the court involve only questions of law.

## Discussion

As a preliminary matter, the court first notes the somewhat unusual procedural posture of this case. Although the substance of the parties' dispute has been fully resolved, the court still must determine whether plaintiffs would have prevailed if Congress had not amended § 415 of the Internal Revenue Code and if ERS had not reinstated plaintiffs' vested benefits, in order to resolve plaintiffs' claim for prejudgment interest.

Secondly, as a practical matter, the court cannot help but wonder why the Board is even contesting the plaintiffs' right to prejudgment interest. As trustee of the retirement funds, the Board of course owes a fiduciary duty to these beneficiaries and surely must appreciate that, absent payment of compensatory prejudgment interest, ERS would stand unjustly enriched at plaintiffs' expense (ERS having invested and presumably earned interest on the very benefits that were withheld — even from defendants' perspective the benefits were withheld only because the trustees felt compelled to do so under federal tax law and then-applicable provisions of the Act, or so they say). Putting ERS's legal defenses to one side for the moment, surely defendants must agree that plaintiffs (as beneficiaries of the ERS trust) have a superior equitable right to the interest earned

5

on their money during the period that defendants withheld their pension payments. Besides, even if the law did provide ERS with legal immunity from a federal court order to pay interest to these pensioners, certainly no available legal defense would preclude the trustees from doing the right and equitable thing for ERS's beneficiaries.

Nevertheless, whether the Board ought to voluntarily pay interest or whether it ought instead to try to interpose the state's immunity in an effort to sidestep the payment of interest earned at the expense of its pensioners, despite its fiduciary obligations, are not issues properly before the court. Because plaintiffs maintain that they have not yet been fully and adequately compensated for the financial losses occasioned upon them, and because the defendants persist in asserting legal defenses, the court will briefly address the merits of plaintiffs' constitutional attack upon the Act, as a necessary prerequisite to considering whether ERS can validly invoke the state's Eleventh Amendment immunity to avoid an order to pay interest to plaintiffs.

I.    Unconstitutional Takings.

Plaintiffs allege that the Act deprived them of vested pension benefits in violation of several constitutional provisions. However, one will suffice: plaintiffs' assertion that the Act unconstitutionally deprived them of property (i.e., vested pension benefits) without just and adequate compensation has merit.

The Supreme Court has recognized that the concept of a "taking" within the meaning of the Fifth Amendment does not lend itself to precise definition. Accordingly, it has "eschewed the development of any set formula for identifying a 'taking' forbidden by the Fifth Amendment, and ha[s] relied instead on ad hoc factual inquiries into the circumstances of each particular case." Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 224 (1986). The Court has, however, identified three factors which have particular significance: (1) the challenged regulation's "economic impact" upon the property owner; (2) the extent to which the regulation interferes with the property owner's "distinct investment-backed expectations;" and (3) the "character" of the interference (i.e., whether the governmental action constitutes a physical invasion of the property or merely a readjustment of economic benefits and burdens). Penn Central Transp. Corp. v. New York City, 438 U.S. 104, 124 (1978). In the

7

end, however, the government may not adjust the rights or economic interests of citizens in a manner that forces "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 974 (1st Cir. 1993) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

Here, the Rhode Island Legislature, if not the Board, implicitly recognized that it could not, consistent with the Constitution, unilaterally reduce plaintiffs' vested pension benefits simply to protect the federal tax qualified status of ERS. The Act contains two provisions. First, in order to comply with then-applicable federal tax regulations, the Act purports to reduce the amount of annual pension benefits which ERS may pay to plaintiffs. R.I. Gen Laws §§ 36-10-10.1(e)(i) and (ii). Importantly, however, the Act simultaneously provides that "any amount not permitted to be paid by the retirement system under [section] (ii) shall be paid out of general funds, but only to the extent that amounts have been appropriated for such payments." R.I. Gen. Laws § 36-10-10.1(e). Although that provision is cast in the language of a potentially empty statutory promise, had the Legislature appropriated in good faith

8

the funds necessary to insure that plaintiffs received (from the state or from ERS) the full pension amounts to which they were entitled, plaintiffs would likely have no present claim. However, the Legislature did not appropriate any funds pursuant to § 36-10-10.1(e) and, therefore, plaintiffs were deliberately short-changed on their pensions. Defendants' only proffered justification for the state's failure to step in, as implicitly promised, to make up the short fall with appropriated funds is that Rhode Island, like Bartelby, simply "preferred not to." See Defendant's response to plaintiffs' motion for summary judgment at 7. Only when Congress subsequently amended § 415 of the Internal Revenue Code did ERS (not the state) pay plaintiffs the amounts which had been withheld. As discussed more fully below, ERS might also have recognized its obligation to pay plaintiffs interest on the pensions which were not paid in a timely fashion, particularly when ERS was undoubtedly earning interest during that very time on that very money.

While it might be argued that the Act as drafted contains no constitutional infirmities, as applied, it unconstitutionally deprived plaintiffs of vested pension benefits to which they were entitled (it should not be forgotten, of course, that plaintiffs also contributed their own money to the plan under specified

9

terms).  See generally Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1000-01 (1984) (outlining relevant factors for courts to consider in evaluating a claimed deprivation of property in violation of the Fifth Amendment).  See also Penn Central Transp. Co., 438 U.S. at 123-28 (1978).  Plaintiffs' interest in continued and undiminished receipt of vested pension benefits they earned and contributed to, is an interest in "property," which is protected by the Fifth Amendment.  See National Education Association-R.I. v. Retirement Board of R.I. Employees' Retirement System, 890 F.Supp. 1143, 1165 (D.R.I. 1995) (holding that ERS beneficiaries have a protected property interest in their pension benefits).  See also Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990) ("The entitlement to disability retirement is a constitutionally protected property interest."); Knudson v. City of Ellensburg, 832 F.2d 1142, 1147 (9th Cir. 1987) (upon disability, the right to receive medical disability benefits vests, and plaintiff's interest in those benefits is a constitutionally protected property interest.)

It is equally apparent that plaintiffs' protected property interests were "taken," albeit only temporarily.[2]  Despite the

_____

[2]  That, as it turned out, payment of plaintiffs' vested pension benefits was merely delayed, rather than permanently diminished, does not undermine the court's conclusion that

10

limited period of unlawful deprivation, plaintiffs sustained (and continue to feel the impact of) a real and quantifiable harm when their vested pensions were not paid. Although the Act appears to provide an adequate remedy for that taking (i.e., supplemental state payments), the Legislature never appropriated the promised funds which were to have been used to "compensate" plaintiffs for the taking — i.e., the funds necessary to make up for the money ERS withheld. As defendants casually note, "The Act provided for such payments only to the extent that the State voluntarily elected to appropriate funds for such payments. The State elected not to fund those differences." Defendants' response to plaintiffs' motion for summary judgment at 7 (footnote omitted).

---

plaintiffs suffered a "taking" of their property. Likewise, the fact that Congress retroactively amended the provisions of § 415 (thereby facilitating ERS's reinstatement of plaintiffs' benefits without adverse federal tax consequences) does not affect the validity of plaintiffs' constitutional challenge to the Act. Under the Act, plaintiffs were deprived of vested, constitutionally protected, property rights. Despite provisions in the Act which suggested that the Rhode Island Legislature would reimburse plaintiffs for any loss, the Legislature never took the requisite steps (i.e., appropriating funds) to make plaintiffs whole. In short, although the challenged provisions of the Act were in effect for only a short time and facially appear to present no obvious constitutional infirmities, the statute, as applied and enforced, unconstitutionally deprived plaintiffs of vested property rights, for which they are entitled to compensation.

In light of the foregoing, the court holds that the Act, as applied, unconstitutionally deprived plaintiffs of "property" without just compensation, in violation of the Fifth Amendment. The relevant factors identified by the Supreme Court in Penn Central, supra, support the conclusion that plaintiffs suffered an unconstitutional deprivation of property: the Act, as applied, had a substantial adverse "economic impact" upon plaintiffs; it interfered with plaintiffs' legitimate, distinct investment-backed expectations, Ruckelshaus v. Monsanto, 467 U.S. at 1011; and the character of the governmental action, although defying precise definition, is more akin to a "physical invasion" or confiscation of plaintiffs' property, rather than simply a readjustment of economic benefits and burdens (e.g., this is not analogous to the exercise of the state's power to levy taxes nor is it a situation in which the state could reasonably conclude that taking plaintiffs' property was reasonably necessary to promote the health, safety, morals, or general welfare of the public.).

Because the court finds and rules that plaintiffs were unconstitutionally deprived of protected property interests in their vested pension benefits, the court need not address their other constitutional claims. Accordingly, the court next

12

examines whether, as defendants argue, the Eleventh Amendment divests this court of jurisdiction to order defendants to make plaintiffs whole.

II.   The Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI.  Defendants assert that ERS is an arm of the State of Rhode Island and, therefore, enjoys the state's Eleventh Amendment immunity.  Plaintiffs disagree.

In order to determine whether the Eleventh Amendment shields these defendants from liability for prejudgment interest, the court must first determine whether ERS is "sufficiently a part of the central government to be considered an arm of the state." Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority, 991 F.2d 935, 939 (1st Cir. 1993).  "The mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court jurisdiction.  A 'slice of state power,'

13

without more, will not sate the Eleventh Amendment." Id. at 939 (quoting Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979)).

When, as here, it is not readily apparent whether an entity falls within the protections afforded by the Eleventh Amendment, courts have considered several factors. See generally Regents of the Univ. of California v. Doe, 117 S.Ct. 900, 904 (1997). The Court of Appeals for the First Circuit has provided the following non-exhaustive list of such factors:

   a.   whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees;

   b.   whether the agency's function is governmental or proprietary;

   c.   whether the agency is separately incorporated;

   d.   whether the state exerts control over the agency, and if so, to what extent;

   e.   whether the agency has the power to sue, be sued, and enter contracts in its own name and right;

   f.   whether the agency's property is subject to state taxation; and

   g.   whether the state has immunized itself from responsibility for the agency's acts or omissions.

14

<u>Metcalf & Eddy</u>, 991 F.2d at 939-40.  <u>See also</u> <u>Ainsworth</u>
<u>Aristocrat Int'l. Party Ltd. v. Tourism Company of the</u>
<u>Commonwealth of Puerto Rico</u>, 818 F.2d 1034, 1037-38 (1st Cir.
1987).  Typically, however, "the vulnerability of the State's
purse [is] the most salient factor in Eleventh Amendment
determinations."  <u>Hess v. Port Authority Trans-Hudson Corp.</u>, 115
S.Ct. 394, 404 (1994).


    A.    <u>ERS's Ability to Pay Prejudgment Interest Without</u>
          <u>Reliance Upon the State's Financial Resources</u>.

In support of their assertion that ERS is not financially
independent of the State of Rhode Island, defendants note that
the state has statutorily pledged to make all necessary payments
to ERS that it is required to make under R.I. Gen. Laws § 36-10-
1, et seq.  Defendants also point out that ERS has no "fiscal
autonomy," lacks the authority to raise funds on its own, and is
required to hold all of its funds in trust for the benefit of ERS
beneficiaries.  In summary, defendants assert that, "[n]either
the Board nor the [Employee Retirement] System possess [sic]
funding power sufficient to satisfy judgments without State
intervention."  Defendants' memorandum at 13.


Defendants have, however, failed to offer much support for
those broad and conclusory allegations.  Here, plaintiffs seek

15

the payment of interest on funds which ERS improperly withheld from them.  It is unclear how ERS's payment of prejudgment interest in this matter will require it to turn to the state for financial assistance.  In the absence of facts suggesting the contrary, the court is inclined to acknowledge the obvious and conclude that ERS, an employee pension trust fund which controls, invests, and manages in excess of $2.9 Billion in assets, has the financial ability to pay an award of prejudgment interest in this case <u>without</u> seeking any assistance from the state to do so, and <u>without</u> recourse to the state treasury.  Besides, it is hardly apparent that the state would be obligated to pay any judgment requiring ERS to pay interest to these plaintiffs.  Certainly nothing in the statute suggests that a judgment against ERS will be considered by the state to be a judgment against it.

Although the state is required by statute to make "its contribution" to ERS by "annually appropriating an amount which will pay a rate percent of the compensation paid to the members," R.I. Gen. Laws § 36-10-2, that required contribution appears to relate solely to the state's obligations as employer of the employee/participants in ERS.  Importantly, the state is not required to indemnify ERS for any financial losses or adverse judgments resulting from its corporate operations.  <u>See, e.g.</u>

16

Ainsworth, 818 F.2d at 1037-38.  Nor does the state purport to guarantee the obligations of ERS.  The state's financial obligations to ERS appear to be intentionally limited and are unlikely to be affected by an order compelling ERS to pay prejudgment interest to plaintiffs.  See, e.g., R.I. Gen Laws § 36-10-7 (expressing the legislature's intention that the state meet all of "its obligations [but only] to the extent provided in this chapter.").

B.    ERS's Function - Governmental or Proprietary?

As an employee pension fund, the ERS performs a function typically considered proprietary, rather than governmental.  In a thorough and well reasoned opinion addressing facts strikingly similar to those presented in this case, the United States District Court for the Western District of Missouri described the distinction between "proprietary" and "governmental" functions as follows:

> Government functions are those which are performed for the general public with respect to the common welfare and for which no compensation or particular benefit is received, while proprietary functions are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit or advantage of the governmental unit conducting the activity.

17

<u>Boatmen's First Nat'l. Bank v. Kansas Public Employees Retirement System</u>, 915 F.Supp. 131, 138 (W.D. Mo. 1996) (citation omitted).

Here, as in <u>Boatmen's</u>, ERS serves a function identical to that of a retirement system or pension plan operating in the private sector. "Unlike providing public education or maintaining roads and bridges, the provision of retirement benefits is not a role traditionally undertaken by the state." <u>Id.</u> at 138. Accordingly, the court concludes that ERS performs an essentially proprietary, rather than a governmental, function.

C.    <u>The Independence of ERS</u>.

ERS, as an entity, is largely independent of the State of Rhode Island. It has "the power and privileges of a corporation," R.I. Gen. Laws § 36-8-2, and therefore has the power to hold property, to sue and be sued, to make contracts, to make guarantees, and to incur liabilities in its own name. <u>See</u> R.I. Gen. Laws §§ 7-1.1-4(2) and (7). ERS controls the funds entrusted to it by the state and its employees, possesses the exclusive power to invest those funds, uses investment income to further its goals, and generally administers the corporate system without state restriction or supervision. These factors strongly militate in favor of a determination that ERS is not an arm of

18

the State of Rhode Island and, therefore, is not entitled to the immunity afforded the state by the Eleventh Amendment.

D.    Remaining Factors.

On balance, a reasoned consideration of the remaining factors identified by the Court of Appeals in Metcalf & Eddy, supra, also suggests that ERS is not entitled to Eleventh Amendment immunity. Although some of the 15 members of the Board are appointed by state officials (e.g., the governor, the chairperson of the house finance committee, etc.), the degree of control exercised by the state and elected officials over the composition of the Board and/or its daily operations is, at best, minimal and indirect (appropriately so, given that the Board members owe discrete and independent fiduciary duties to the beneficiaries). "Aside from the power of appointment, the [elected state officials] ha[ve] no direct voice in Board decisionmaking." University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1208 (1st Cir. 1993) (holding that for diversity jurisdiction purposes, the University of Rhode Island is a citizen of Rhode Island, rather than an alter ego or arm of the state).

19

Moreover, a state's control over an agency or other entity "is not dispositive because gauging actual control can be an uncertain and unreliable exercise." Boatmen's First Nat'l Bank, 915 F.Supp. at 139. As noted by the Supreme Court, "Ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates." Hess, 115 S.Ct. at 404. What little control Rhode Island or its elected officials might exercise over ERS is insufficient to warrant the conclusion that ERS is entitled to invoke the state's Eleventh Amendment immunity.

Additionally, while the state has statutorily immunized all members of the Board from personal liability for actions taken in their official capacities, R.I. Gen. Laws § 36-8-3.1, it has not clearly and unequivocally declared ERS to be an arm of the state entitled to share its own sovereign immunity and, concomitantly, its own immunity from suit in federal court under the Eleventh Amendment. Had the Rhode Island Legislature intended the result urged by defendants, it would have and easily could have made that point clear. That ERS is not entitled to Eleventh Amendment immunity is of course further evidenced by the fact that it has "the power and privileges of a corporation," R.I. Gen. Laws § 36-8-2, which include the ability to sue and be sued.

20

Also supporting the court's conclusion is the fact that the Board is expressly exempted from the requirements of the state's administrative procedures act (defendants' arguments to the contrary notwithstanding[3]). See R.I. Gen. Laws §§ 42-35-18(16)-(18). Such an exemption from the provisions of the administrative procedures act is also a persuasive indication that the Board and ERS are substantially autonomous entities, independent of the state. University of Rhode Island v. A.W. Chesterton Corp., 2 F.3d at 1208.

While there are certainly some factors which support defendants' contention that ERS is an arm of the state, those factors are not substantial, quantitatively or qualitatively,

---

[3] Defendants assert that R.I. Gen. Laws § 42-35-1.1, which provides that all state agencies are subject to "the provisions of this chapter [i.e., the APA]," supersedes the subsequent provisions of that very chapter which expressly exclude ERS from compliance with the APA. Defendants' memorandum at 13. Defendants' interpretation of the statute is both slippery and incorrect. Plainly, section 42-35-1.1 evidences the Rhode Island Legislature's intention to enact a single statute governing whether state agencies are or are not subject to the APA. The legislature was no doubt concerned that a number of agencies were being exempted from compliance with the APA by scattered and separate general laws, public laws, and special acts. Section 42-35-1.1 merely evidences the legislature's intention to preclude such practices. For a state agency to be exempt from the provisions of the APA, the exemption must be found in Chapter 42. That is precisely what the legislature did with regard to ERS — it exempted the ERS from the APA in the APA itself. See R.I. Gen. Laws §§ 42-35-18(16)-(18).

21

and, on balance, are entirely insufficient to persuade the court that ERS is entitled to the protections afforded by the Eleventh Amendment. See Ainsworth, 815 F.2d at 1038. Having considered all of the relevant factors, including those identified by the Supreme Court and the Court of Appeals, the court concludes that ERS is not an alter ego or arm of the State of Rhode Island. Accordingly, neither ERS nor the Board is entitled to the protections afforded to the states by the Eleventh Amendment.

III. Prejudgment Interest.

Where, as here, a federal statute is silent with regard to the availability of prejudgment interest, the decision to award such interest is committed to this court's discretion. See, e.g., Conway v. Electro Switch Corp., 825 F.2d 593, 602 (1st Cir. 1987) ("As a matter of federal law, prejudgment interest is a discretionary item of compensation."). See also Segal v. Gilbert Color Systems, Inc., 746 F.2d 78, 82-83 (1st Cir. 1984) (holding that although 28 U.S.C. § 1875 is silent with regard to an award of prejudgment interest, prejudgment interest can be recovered under that act.); Furtado v. Bishop, 604 F.2d 80, 98 (1st Cir. 1979) (assuming, without deciding, that interest is recoverable under 42 U.S.C. § 1983 and noting "we have reservations about an

22

inflexible rule barring prejudgment interest in a section 1983 action.").

Under the circumstances of this case, an award of prejudgment interest is obviously warranted. See generally Rodgers v. United States, 332 U.S. 371, 373-74 (1947). First, "[p]rejudgment interest is an element of complete compensation," without which these plaintiffs will not be fully and fairly compensated for the losses wrongfully visited upon them. West Virginia v. United States, 479 U.S. 305, 310-11 and n.2 (1987). Moreover, "prejudgment interest traditionally has been considered part of the compensation due [to a prevailing] plaintiff." Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989). Finally, an award of prejudgment interest is consistent with the remedial purposes of 42 U.S.C. § 1983. See, e.g., Rao v. New York City Health and Hospitals Corp., 882 F.Supp. 321, 326 (S.D.N.Y. 1995) ("The purpose of the remedial scheme provided by 42 U.S.C. § 1983 is to fully compensate individuals for harm suffered as a result of a constitutional violation. Prejudgment interest is usually a necessary component of any award intended to make a plaintiff whole, because it compensates a plaintiff for delay in the receipt of relief. Consequently, prejudgment interest is generally appropriate in § 1983 actions."); Golden State Transit

23

Corp. v. City of Los Angeles, 773 F.Supp. 204, 216 (C.D.Cal. 1991) ("the Court finds that based on the aforementioned discussion, the equities favor granting [plaintiff] prejudgment interest.  This will best ensure that the purpose of § 1983, to compensate the injured plaintiff, is accomplished.").

In this case, ERS itself has earned an investment return on the wrongfully withheld pension benefits, so it is particularly appropriate to award interest, not only to compensate the plaintiffs fully for their losses, but also to avoid the inequity of ERS's unjust enrichment at the beneficiaries' expense. Accordingly, the court holds that plaintiffs are entitled to an award of prejudgment interest.

Next, the court must determine the appropriate rate of interest to apply.  As the Court of Appeals for the First Circuit has noted:

> As a general rule, federal law governs the scope of remedies available when a claim arises under a federal statute, and this doctrine extends to the rate of prejudgment interest.  Of course, if the particular federal statute is silent, courts have discretion to select an appropriate rate, and they may look to outside sources, including state law, for guidance.

24

<u>Cottrill v. Sparrow, Johnson & Ursillo, Inc.</u>, 100 F.3d 220, 224-25 (1st Cir. 1996). <u>See also</u> <u>Conway</u>, 825 F.2d at 602 ("It was thus the prerogative of the district court, as a matter of state and federal law, to formulate an interest award which it believed would make the plaintiff whole.").

Here, plaintiffs have elected to pursue their claims against defendants pursuant to a federal statute, in a federal forum. In the absence of a compelling reason to employ the interest rate provided by Rhode Island law,[4] the court concludes that it is just and appropriate to use the rate prescribed by federal statute. At a minimum, employing the federally prescribed interest rate will bring a measure of stability and predictability to cases in which plaintiffs raise claims under federal, rather than state law in a federal forum. <u>See</u> <u>Cottrill</u>, 100 F.3d at 225 (noting that the use of the federally prescribed rate of interest would promote uniformity in ERISA cases).

---

[4] Plaintiffs have not, for example, alleged that application of the federal rate of interest will fail to make them whole. <u>See, e.g.</u>, <u>Conway</u>, 825 F.2d at 602 (in the absence of an allegation from plaintiff that the district court's award of interest failed to make her whole, the court of appeals "can only conclude that the court's award fulfilled its intended remedial purposes and need not be disturbed.").

## Conclusion

For the foregoing reasons, the court concludes that plaintiffs' vested annual pension benefits in excess of $10,000 were unconstitutionally withheld from them by ERS. The court also concludes that ERS is neither an arm nor alter-ego of the State of Rhode Island. Accordingly, defendants are not entitled to the protections afforded to the states by the Eleventh Amendment. Moreover, the court concludes that an award of prejudgment interest is necessary (and certainly just), in order to afford plaintiffs complete relief under 42 U.S.C. § 1983 and to preclude ERS's unjust enrichment at the expense of its beneficiaries.

Plaintiffs' motion for summary judgment (document no. 4) and their motion for an award of additional compensation (document no. 19) are granted. Plaintiffs are awarded prejudgment interest at the rate prescribed by 28 U.S.C. § 1961 for awards of postjudgment interest. Defendants' cross-motion for summary judgment (document no. 7) is denied.

26

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 31, 1997

cc:  Barbara S. Cohen, Esq.
     Michael P. DeFanti, Esq.
     Rebecca Tedford Partington, Esq.
     Raymond F. Burghardt