Vigilant Ins. v. Firetech Sprinkler    CV-99-191-B    11/17/00

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


**Vigilant Insurance Company**

    v.                                       Civil No. 99-191-B
                                              Opinion No. 2000DNH245

**Firetech Sprinkler
Corporation, et. al.**


**MEMORANDUM AND ORDER**

The Vigilant Insurance Company reimbursed its insureds for damages that they suffered during a fire at the North Conway Outlet Center.  It then brought this action against the Firetech Sprinkler Corporation and several other defendants.  Vigilant charges that Firetech is liable because it purchased certain assets from the company that installed the outlet center's sprinkler system.  Firetech has responded with a motion for summary judgment.


## I.   BACKGROUND[1]

The North Conway Outlet Center was damaged in a fire that

---

[1]  I describe the facts in the light most favorable to Vigilant, the nonmoving party. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

started in an unoccupied portion of the building on March 21, 1999. Although the Carpenter Sprinkler Company, Inc. and The Carpenter Supply Corporation (collectively "Carpenter") had installed a sprinkler system at the center in 1991, it did not cover the area where the fire started. Vigilant's insureds, Pfaltzgraff, and the Pfaltzgraff Outlet Company, incurred substantial property damage as a result of the fire.

On August 11, 1992, Lee and Lori Lawton formed the Firetech Sprinkler Corporation for the purpose of acquiring Carpenter's assets and engaging in the sprinkler business. The next day, Firetech entered into an agreement with Carpenter to pay it $75,000 for the following assets:

> Any equipment, drawings, records, tools, dyes, trade secrets and rights to maintain those sprinkler systems previously installed by or owned by [Carpenter]; all as set forth on Exhibit "A" (list of tools and equipment at [Carpenter's] principal location appraised by American Auctioneers and Appraisals, Inc.); on Exhibit "B" (eleven (11) sets of "crew tools"); Exhibit "C" (list of assumed contracts); and goodwill.

Ex. A to Def.'s Mot. for Summ. J., (Doc. No. 25), at § 1. The agreement also provides that:

> (i) [Firetech] shall not assume, pay, perform or be in any way liable for any debts, liabilities, contracts, commitments or obligations of [Carpenter], except as otherwise specifically provided herein . . .[Carpenter] shall pay and shall indemnify and hold [Firetech] harmless against and from any and all debts, liabilities, contracts, commitments, or obligations of [Carpenter], except as otherwise agreed to hereunder.

Id. at § 5(A).  Neither party has produced the list of assumed contracts referred to as Exhibit "C."  Nor does the agreement otherwise identify any obligations that Firetech agreed to assume.

Carpenter filed for bankruptcy protection on August 12, 1992 and the bankruptcy court approved the asset sale on September 14, 1992.  The asset sale was completed on October 13, 1992.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. Id. at 248. In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-movant and determine whether the moving party is entitled to judgment as a matter of law. See Oliver, 846 F.2d at 105.

Where the nonmoving party bears the burden of persuasion at trial, it must "make a showing sufficient to establish the existence of [the] element[s] essential to [its] case" in order to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). It is not sufficient for the non-movant to "rest upon mere allegation[s] or denials [contained in that party's] pleading." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, 477 U.S. at 256). Rather, to establish a trial-worthy issue, there must be enough competent

evidence "to enable a finding favorable to the nonmoving party."
Id. at 842 (internal citations omitted).

I apply this standard in ruling on Firetech's motion for summary judgment.

## III. **DISCUSSION**

Under New Hampshire law, a corporation does not become responsible for another corporation's liabilities merely by purchasing its assets. See Cyr v. B. Offen & Co., Inc., 501 F.2d 1145, 1152 (1st Cir. 1974); see also 15 William Meade Fletcher et al. Fletcher Cyclopedia of the Law of Private Corporations § 7122 (perm. ed., rev. vol. 1999). Exceptions have been recognized where: (1) the buyer expressly or impliedly agrees to assume the seller's liabilities; (2) the asset purchase qualifies as a de facto merger; (3) the buyer is a "mere continuation" of the seller; (4) the buyer is not a purchaser in good faith; or (5) the transaction is fraudulent. See Cyr, 501 F.2d at 1152 ; see

also <u>Fletcher</u>, §§ 7122, 7123.[2]  Vigilant relies primarily upon the "mere continuation" exception to support its successor liability claim.

In determining whether an asset purchaser will be treated as a "mere continuation" of the seller, a court must consider a variety of factors including:  (1) whether the buyer holds itself out to the public as a continuation of the seller by using its name or by otherwise exploiting its good will; (2) whether the buyer assumed the seller's "ordinary business obligations and liabilities"; (3) whether the buyer maintained the seller's "management, personal, physical location, and assets"; and (4) whether the seller dissolved its business after completing the asset sale.  <u>Fletcher</u>, § 7123.20.  No single factor is

_____

[2]  The parties assume that the successor liability issue is governed by New Hampshire law even though the Asset Purchase Agreement calls for Vermont law to be used in resolving disputes concerning the agreement.  I defer to the parties' choice of New Hampshire law without examining the agreement's choice of law clause because the law in both states is the same in all material respects.  <u>Compare</u> <u>MacCleery v. T.S.S. Retail Corp.</u>, 882 F. Supp. 13, 16 (D.N.H. 1994) (applying New Hampshire law) with <u>Cab-Tek, Inc. v. E.B.M., Inc.</u>, 571 A.2d 671, 672 (VT. 1990)(applying Vermont law).

determinative and other factors may also be relevant depending upon the circumstances of each case. See id.; cf. MacCleery, 882 F. Supp. at 16 (discussing de facto merger analysis).

Applying New Hampshire law to the facts of this case, I am satisfied that Firetech is not a "mere continuation" of Carpenter. First, although Firetech purchased Carpenter's good will along with its other assets, it did not use Carpenter's name or otherwise suggest to the general public that it was a "mere continuation" of Carpenter. Vigilant challenges this conclusion by noting that Firetech retained Carpenter's telephone number and hired several of its key employees. It argues that this evidence demonstrates that Firetech held itself out as a successor to Carpenter. I disagree. While I have no doubt that Firetech benefitted to some degree by obtaining Carpenter's telephone number and by hiring certain of its key employees, the record fails to support Vigilant's claim that either fact could have caused Firetech's potential customers to reasonably believe that it was acting as Carpenter's successor. It simply reaches too far to argue, as Vigilant does, that an arms-length asset

purchaser can become responsible for a seller's liabilities merely by also acquiring the seller's telephone number and hiring several of its key employees.

Second, Firetech did not assume any of Carpenter's general business obligations or liabilities when it purchased Carpenter's assets. The Asset Purchase Agreement states that Firetech did not agree to assume any of Carpenter's "debts, liabilities, contracts, commitments, or obligations" unless they were specifically identified in the agreement. Although the agreement refers to a list of assumed contracts as "Exhibit C," neither party has produced a copy of the exhibit and the agreement does not otherwise identify any obligations that Firetech agreed to assume when it purchased Carpenter's assets. Thus, the record contains no evidence to contradict Firetech's claim that it negotiated new contracts with any of Carpenter's former customers that decided to do business with Firetech rather than assuming Carpenter's existing contracts.

Third, Firetech is owned and controlled by a different group of individuals than the group that owned and controlled

Carpenter. Carpenter was principally owned by Wayne Lafayette. Firetech is principally owned by Lee and Lori Lawton. None of Firetech's owners ever owned any stock in Carpenter. Moreover, none of Firetech's officers or directors ever served as officers or directors of Carpenter. While Firetech hired many of Carpenter's former employees and operates its business in the same town as Carpenter's former place of business, these facts are of limited significance given that the two businesses have entirely distinct ownership and control groups.

Finally, while the fact that Carpenter ceased its operations and dissolved after selling its assets weighs in favor of a determination that Firetech is a "mere continuation" of Carpenter, it is not sufficient even when combined with the other evidence that Vigilant relies on to support its claim. When all of the evidence is construed in the light most favorable to Vigilant, it leads inevitably to the conclusion that Firetech is a simple asset purchaser and not a "mere continuation" of Carpenter. To hold otherwise would make arms-length asset purchasers responsible for the seller's liabilities even when the

purchaser has expressly disclaimed any such responsibility and the evidence demonstrates that the buyer has not attempted to capitalize on the seller's good will. This is a result that New Hampshire law will not permit.[3]

## IV. <u>CONCLUSION</u>

For the reasons described in this Memorandum and Order, I grant Firetech's motion for summary judgment (Doc. No. 25) and the clerk is directed to enter judgment accordingly.

SO ORDERED.

                            _____
                            Paul Barbadoro
                            Chief Judge

November 17, 2000

---

[3] Vigilant also contends that Firetech is responsible for Carpenter's liabilities under the <u>de facto</u> merger exception. The analysis required under this exception is similar to the analysis required under the "mere continuation" exception. <u>See</u> <u>Fletcher</u>, § 7123.20 (discussing continuation of enterprise and <u>de facto</u> merger exceptions); <u>see</u> <u>also</u> <u>MacCleery</u>, 882 F. Supp. at 16 (same). Thus, I reject Vigilant's <u>de facto</u> merger argument for the same reasons that I reject its claim under the "mere continuation" exception.

cc:  Paul R. Bartolacci, Esq.
     Dona Feeney, Esq.
     Richard Mills, Esq.
     Rodney L. Stark, Esq.
     John P. Shea, Esq.
     Donald J. Perrault, Esq.